### FRUIT GROWERS' SUPPLY CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 6521.

Circuit Court of Appeals, Ninth Circuit.

Feb. 8, 1932.

As Amended on Denial of Rehearing March 7, 1932.

Leonard B. Slosson, of Los Angeles, Cal., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key and Erwin N. Griswold, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, and Frank M. Thompson, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before WILBUR and SAWTELLE, Circuit Judges, and JAMES, District Judge.

WILBUR, Circuit Judge.

This is a proceeding to review an order of the United States Board of Tax Appeals redetermining petitioner's taxes for the years 1919, 1920, 1921, and 1923. The petitioner concedes at the outset that it was not entitled to claim exemption for the years 1919 and 1920. The amount of the taxes for the year 1921 determined by the Commissioner of Internal Revenue was $72,599.23, and for 1923 was $12,636.71. These determinations were sustained by the Board of Tax Appeals to the extent of $61,759.71 for 1921, and $12,019.84 for 1923. This tax was imposed upon income derived in part by the petitioner from the sale of lumber and shook to nonmembers at market prices during the years 1921 and 1923 as follows: For 1921, $762,185.02; for 1923, $1,557,527.87. The Commissioner found the total taxable income for 1921 to be $421,138.87, and, for the year 1923, $101,093.70.

The facts upon which the Board of Tax Appeals bases its conclusion are set out in its findings, which are not seriously questioned. We refer to the opinion and findings of the Board of Tax Appeals (21 B. T. A. 315) for a detailed statement of these admitted facts, and will avoid a restatement thereof as far as possible in the presentation of the legal question involved.

Petitioner contends that it is exempt from income tax for the years 1921 and 1923 by reason of the provisions of section 231, subd. 11, of the Revenue Act of 1921 (42 Stat. 253). This subdivision exempts organizations " * * * organized and operated

as purchasing agents for the purpose of purchasing supplies and equipment for the use of members and turning over such supplies and equipment to such members at actual cost, plus necessary expenses."

It is conceded that the corporate powers of the petitioner are a great deal broader than those indicated in the statute, but it is correctly contended that, where the organization actually operated as a purchasing agent for the purposes defined in the statute, it is entitled to exemption, notwithstanding the fact that its powers exceeded those found in the statute. Riverdale Co-op. Creamery Ass'n v. Commissioner (C. C. A.) 48 F.(2d) 711. The petitioner operated as a subsidiary of the Fruit Growers Exchange, a co-operative organization for the sale of fruit grown or packed by its members. It manufactured lumber and shook for the manufacture of packing boxes for the marketing of the fruit of the Fruit Growers Exchange. It also purchased other supplies for the fruit growers. Its method of selling its product and supplies to its members was to charge them a certain price at the time of delivery, and thereafter to increase or decrease the amount thus paid by deduction or addition made at the end of the year, which reflected the actual cost to the petitioner of the goods and material thus supplied to the members. The Commissioner of Internal Revenue recognized this method of fixing the price of material and supplies furnished the members of petitioner by allowing a deduction from its gross income of the amount thus repaid to its members. These deductions are styled "patronage dividends" and represented the amounts returned to the purchasers of supplies from the profits. The amount of "patronage dividends" thus deducted from the gross income of the petitioner for the year 1921 was $1,312,114.21. This amount was deducted from the total income of $1,733,253.08, leaving a net income of $421,138.87, as above stated.

Before considering further petitioner's claim of exemption, attention should be called to the regulations of the Treasury Department, decision 3511, promulgated September 6, 1923, being amended by article 522 of Regulations No. 62, which we quote in full as follows:

"Art. 522. Cooperative associations. (a) Cooperative associations, acting as sales agents for farmers, fruit growers, livestock growers, dairymen, etc., or engaged in the marketing of farm products, and turning back to the producers the proceeds of the sales of their products, less the necessary operating expenses, on the basis of the produce furnished by them, are exempt from income tax, and shall not be required to file returns. Thus cooperative dairy companies which are engaged in collecting milk and disposing of it or the products thereof and distributing the proceeds, less necessary operating expenses, among the producers, upon the basis of the quantity of milk or of butterfat in the milk furnished by such producers, are exempt from the tax. If the proceeds of the business are distributed in any other way than on such a proportionate basis, the association does not meet the requirements of the statute and is not exempt. The accumulation and maintenance of a reasonable reserve for depreciation or possible losses or a reserve required by state statute or a reasonable sinking fund or surplus to provide for the erection of buildings and facilities required in business, or for the purchase and installation of machinery and equipment, or to retire indebtedness incurred for such purposes will not destroy the exemption. A corporation organized to act as a sales agent for farmers, or to market cooperatively the products of the farm, and having a capital stock on which it pays a dividend not exceeding the legal rate of interest in the state in which it is incorporated and in which substantially all of the outstanding capital stock is owned by actual producers, will not for such reasons be denied exemption, but any ownership of stock by others than actual producers who market their products through the association must be satisfactorily explained in the application for exemption. In every such case the association will be required to show that the ownership of its capital stock has been restricted as far as possible to actual producers and that the association has not voluntarily sold or issued any stock to nonproducers. Thus, if by statutory requirement all officers of an association must be stockholders, the ownership of a share of stock by a nonproducer to qualify him as an officer will not destroy the association's exemption. Likewise, if a stockholder for any reason ceases to be a producer and the association is unable, because of a constitutional inhibition or other reason beyond the control of the association, to purchase or retire the stock of such nonproducer, the fact that, under such circumstances, a small amount of the outstanding capital stock is owned by stockholders who are no longer producers will not destroy the exemption.

"(b) Cooperative associations organized and operated as purchasing agents for farmers, fruit growers, livestock growers, dairymen, etc., for the purpose of buying supplies and equipment for their use and turning over such supplies and equipment to them at actual cost, plus necessary operating expenses, are also exempt. The provisions of paragraph (a) relating to a reserve, sinking fund or surplus, and to capital stock shall apply to associations coming under this paragraph.

"In order to be exempt under either (a) or (b) an association must establish that it has no net income for its own account other than that reflected in a reserve, sinking fund, or surplus specifically authorized in paragraph (a). An association acting both as a sales and a purchasing agent is exempt if as to each of its functions it meets the requirements of the statute."

■ We are principally concerned in this case with that provision of the article providing that, in order to be exempt under subdivision (b), an association must establish that it had "no net income for its own account" other than that reflected in a reserve sinking fund or surplus specifically authorized in paragraph (a).

The contention of the petitioner may be summarized as follows: The business of manufacturing and selling lumber and shook to outsiders was purely incidental to the main and cardinal purpose of the petitioner and constituted a very small percentage of the business of the petitioner, and, when it is treated as a part of the business of the larger corporation of which it is a subsidiary, constitutes a still smaller fraction of the total volume of business of these organizations amounting in all to not more than 2 per cent. The total volume of business of petitioner for 1921 was $11,078,187.02, for 1923 was $10,626,231.11, and for the corresponding years the business of the California Fruit Growers Exchange was $62,379,836.24 and $54,510,450.63. The contention is not only that this sale to nonmembers is purely incidental to the manufacture of lumber and shook for its members, but also that the petitioner was under obligation to the government from whom it procured its timber to manufacture the lumber and dispose of it for its highest utility. Consequently, it was the duty of the petitioner to manufacture the better grades of timber into lumber for other uses than box making. It is also contended that the practical result of the sales to nonmembers was to reduce the expense of manufacturing lumber furnished to members, and that the members of the petitioner were entitled to have the expense of manufacturing thus reduced.

By recognizing the so-called "patronage dividends" the Commissioner deducted from the income of the corporation a large portion of its income derived from the transaction of its business as the purchasing agent. The statute under which petitioner claims exemption (Revenue Act of 1921, c. 136, 42 Stat. 227, 253, § 231 (11) exempts corporations organized and operated as purchasing agents for purchasing supplies and equipment for the use of members at actual cost, plus necessary expenses. To the extent that the petitioner sold supplies to nonmembers it was not operating according to this statute, and it is therefore not entitled to exemption, notwithstanding the fact that the percentage of sales to nonmembers is relatively small. Considered separately, the amounts were very large. The income derived by the corporation from the sale of supplies to nonmembers was income to the corporation and taxable as such. The fact that under the terms of its organization and its method of conducting business this income would go to its members in proportion to the amount of goods purchased by them instead of in proportion to the stock held by them does not alter the fact that the amount received is in the nature of a profit, and, therefore, income, to be distributed in accordance with the form of organization of the corporation. The rules of the Treasury Department above quoted permit the payment of dividends to stockholders to the extent of 6 per cent. without loss of tax exemption; consequently, where the corporation is acting solely as a purchasing agent contemplated by the law (Revenue Act of 1921, c. 136, 42 Stat. 227, 253, § 231 (11), it is permissible under the rules of the Treasury Department to appropriate from the gross receipts of the corporation from sales to its members an amount which would pay to the stockholders upon their investment in the business a rate of interest not exceeding the legal rate. This method of doing business would increase the cost of supplies to the members purchasing the same or receiving the same through the corporation and return that increase to those members who had invested capital in the organization. By this method the member who made no purchases would secure a return upon his investment in the stock of the corporation to be derived from the moneys paid by the members who did purchase supplies through the agency of the corporation. Where, how-

ever, the corporation engaged in business with nonmembers, the situation to that extent is entirely different. The nonmember pays the market price. From this market price the petitioner can and did derive a profit. If this profit were used for the payment of dividends to the stockholders or members in proportion to their capital stock, it would clearly be income to the corporation. It makes no practical difference whether the price of supplies furnished the members is increased by a sufficient sum to return 6 per cent. on the capital investment of the members, or whether the 6 per. cent. paid to the members upon their capital investment is paid directly from the profits of business with nonmembers. In either event the amount paid by the members for supplies would be the same, and the amount received by them upon their investment would be the same. The simple fact is that, to the extent to which the petitioner engaged in the business of purchasing supplies and furnishing such supplies to nonmembers, it was not doing the type of business exempted by law, and its profit thus derived was taxable as income under the general provision of the revenue law (Revenue Acts 1918, § 200 et seq. 1921, supra), regardless of the disposition made of these profits by the corporation. We cannot believe that the method by which this income is distributed to the members detracts in anywise from the fact that the profit is essentially an income to the corporation, and we believe, and hold, that the Board of Tax Appeals correctly determined this question.

██ Petitioner also predicates error upon the theory that it had no income for the years 1919, 1920, 1921 and 1923. This contention is merely another method of stating the claim of exemption. It is claimed that, inasmuch as the corporation was bound by the terms of its organization to return to its members the whole of the income derived from its business operations it in effect had no income.

██ The fact that the corporation was obligated to pay its stockholders 6 per cent. upon the investment from its profits does not diminish the income of the corporation to that extent. The obligation to pay dividends is not one which can be claimed as deduction from gross income. There is nothing in this point. Petitioner claims that its gross income should have been decreased by the amount which it was obligated by its charter and by-laws to return to its members who purchased supplies, although such amount had not in fact been returned and had not as yet been determined. In other words, the petitioner claims that under its system of doing business there are additional "patronage dividends" accruing to its customer members for the taxable years 1921 and 1923. A somewhat similar contention was considered by the Supreme Court in dealing with a mutual life insurance company. Penn Mutual Life Ins. Co. v. Lederer, 252 U. S. 523, 40 S. Ct. 397, 64 L. Ed. 698. It was held that, in computing the gross income of the insurance company, payments made by members could not be reduced by amounts which had not been actually repaid to them or credited to them within the taxable year. Until "patronage dividends" are declared they have not accrued as obligations from the corporation to its members. We agree in this regard with the conclusions of the Board of Tax Appeals which we quote as follows: "The petitioner now asks that we increase the patronage-dividend deduction on account of an amount which has not been returned to the members and when no dividend declaration has been made with respect thereto. We find nothing in the petitioner's by-laws which would cause these patronage dividends to accrue as such without corporate action setting them apart as a liability of the petitioner to its members. The by-laws provide that it shall be the duty of the directors to 'declare dividends out of surplus profits when such profits shall, in the opinion of the directors, warrant the same, subject to the provisions' of another section wherein it is provided that the directors are authorized to prescribe 'the time and manner of readjustment with or refund to its patrons.' A reasonable interpretation of the foregoing would seem to be that corporate action is required before patronage dividends accrue, and this conclusion is consistent with the minutes of the board of directors for the various years here involved."

The order is affirmed.