**BURR CREAMERY CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.**

No. 6935.

Circuit Court of Appeals, Ninth Circuit.

Dec. 23, 1932.

Claude I. Parker and Ralph W. Smith, both of Los Angeles, Cal., and Llewellyn A. Luce, of Washington, D. C., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key and Morton K. Rothschild, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, and J. Arthur Adams, Sp. Atty., Bureau of

Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

MACK, Circuit Judge.

The petition herein seeks a review of the Board of Tax Appeal's order which affirmed respondent's determination denying exemption to petitioner from income and excess profit taxes for the years 1922 and 1923, under section 231 (11) of the Revenue Act of 1921, 42 Stat. 253. The relevant statutory and regulatory provisions are quoted in the margin.[1]

The facts are fully stated in the Board's opinion, 23 B. T. A. 1007. Those essential to our decision may be summarized as follows:

Burr Creamery Company, of which Burr was sole stockholder, was engaged in the business of buying, pasteurizing, and distributing milk. In 1919, Burr became a member of the California Milk Producers' Association, hereinafter called "association." Taxpayer was organized under the laws of

California to take over a part of the assets of the Burr Creamery Company. The capital stock of taxpayer consisted of 1,000 shares of $100 par value per share.

The purposes for which taxpayer was formed, as stated in the articles of incorporation, were practically unlimited. The directors were empowered, under the by-laws, to declare dividends out of surplus profits arising from the conduct of the business. Shortly after taxpayer was organized, Burr Creamery Company agreed with the association to sell 600 shares of the capital stock of the taxpayer to the association for $60,000, reserving an option to the Burr Creamery Company to sell the remaining 400 shares for $40,000. Taxpayer duly transferred the full amount of its authorized capital stock of $100,000 par value to the Burr Creamery Company for that part of the assets of that company used in the distribution of milk. Burr Creamery Company was legally dissolved in 1921. From 1920 until 1925, Burr was manager of taxpayer. He received as compensation a separate salary and also a percentage of the profits of the business based upon the amount of stock of the taxpayer

---

[1] "Sec. 231. That the following organizations shall be exempt from taxation under this title— * * *

"(11) Farmers', fruit growers', or like associations, organized and operated as sales agents for the purpose of marketing the products of members and turning back to them the proceeds of sales, less the necessary selling expenses, on the basis of the quantity of produce furnished by them; or organized and operated as purchasing agents for the purpose of purchasing supplies and equipment for the use of members and turning over such supplies and equipment to such members at actual cost, plus necessary expenses."

Treasury Regulations 62, as amended by T. D. 3511 (C. B. II-2, p. 201):

"Art. 522. Cooperative association.—(a) Cooperative associations, acting as sales agents for farmers, fruit growers, livestock growers, dairymen, etc., or engaged in the marketing of farm products, and turning back to the producers the proceeds of the sales of their products, less the necessary operating expenses, on the basis of the produce furnished by them, are exempt from income tax and shall not be required to file returns. Thus cooperative dairy companies, which are engaged in collecting milk and disposing of it or the products thereof and distributing the proceeds, less necessary operating expenses, among the producers upon the basis of the quantity of milk or of butterfat in the milk furnished by such producers, are exempt from the tax. If the proceeds of the business are distributed in any other way than on such a proportionate basis, the association does not meet the requirements of the statute and is not exempt. The accumulation and maintenance of a reasonable reserve for depreciation or possible losses or a reserve required by State statute or a reasonable sinking fund or surplus to provide for the erection of buildings and facilities required in business, or for the purchase and installation of machinery and equipment, or to retire indebtedness incurred for such purposes will not destroy the exemption. A corporation organized to act as a sales agent for farmers, or to market cooperatively the products of the farm, and having a capital stock on which it pays a dividend not ex-

ceeding the legal rate of interest in the State in which it is incorporated and in which substantially all of the outstanding capital stock is owned by actual producers, will not for such reasons be denied exemption, but any ownership of stock by others than actual producers who market their products through the association must be satisfactorily explained in the application for exemption. In every such case the association will be required to show that the ownership of its capital stock has been restricted as far as possible to actual producers, and that the association has not voluntarily sold or issued any stock to nonproducers. Thus, if by statutory requirement all officers of an association must be stockholders, the ownership of a share of stock by a nonproducer to qualify him as an officer will not destroy the association's exemption. Likewise, if a stockholder for any reason ceases to be a producer and the association is unable, because of a constitutional inhibition or other reason beyond the control of the association, to purchase or retire the stock of such nonproducer, the fact that, under such circumstances, a small amount of the outstanding capital stock is owned by stockholders who are no longer producers will not destroy the exemption.

"(b) Cooperative associations organized and operated as purchasing agents for farmers, fruit growers, livestock growers, dairymen, for the purpose of buying supplies and equipment for their use and turning over such supplies and equipment to them at actual cost, plus necessary operating expenses, are also exempt. The provisions of paragraph (a) relating to a reserve, sinking fund, or surplus and to capital stock shall apply to associations coming under this paragraph.

"In order to be exempt under either (a) or (b) an association must establish that it has no net income for its own account, other than that reflected in a reserve, sinking fund, or surplus specifically authorized in paragraph (a). An association acting both as a sales and a purchasing agent is exempt if as to each of its functions it meets the requirements of the statute."

which he owned. In his income tax return Burr treated the income which he received from the taxpayer as dividends received. At December 31, 1921, taxpayer had a surplus of $89,483.56; at December 31, 1922, the surplus was $116,609.21; at December 31, 1923, the surplus was $169,082.83. These amounts were retained in the business of the taxpayer for the purchase of additional equipment. The remainder of the profits of taxpayer, other than those paid to Burr as compensation, were turned over to the association at the end of each month. Money was also paid over upon demand of the association whenever it was available.

The business of taxpayer during 1922 and 1923 was distributing milk, cream, and dairy products to its customers. Taxpayer obtained raw milk from association and pasteurized it. Association charged taxpayer the same amount for milk that it charged any other creamery. Association did not produce certified milk, and accordingly taxpayer purchased such milk, amounting to about one-third of the total of milk purchased, from persons not connected with association. In order to meet competition, taxpayer had to deal in certified milk, and it also bought a comparatively small amount of cottage cheese and butter from persons not connected with association. Nothing was bought from outsiders that could be bought from members of the association. No refunds were made to those persons not connected with association.

Taxpayer handled approximately one-third of the milk and cream of the association in 1922 and 1923. Association required the taxpayer to take all the milk which could not be sold to other creameries. At times this surplus milk was churned and the buttermilk sold to jobbers. Due to the fact that taxpayer was required to take this surplus milk its profits were sometimes reduced, and during the last six months of 1922, taxpayer operated at a loss. In 1922 and 1923, taxpayer bought approximately 83 per cent. of its milk from association. In 1921, the board of directors of taxpayer passed a resolution that the profits of taxpayer, if needed, were to be used for the purchase of real estate, building and creamery equipment necessary for conducting the business, and that after the real estate and buildings and creamery equipment were paid for, Burr was authorized to draw out his percentage of the profits earned by the taxpayer.

■ While on the record before us, we should have difficulty in finding that taxpayer was a wholly owned subsidiary of association, nevertheless, for the purposes of this case, we shall proceed, as did the Board of Tax Appeals, on the assumption that association had acquired, prior to 1922, the entire capital stock. We also accept the stipulation of the parties that association is tax exempt within the provisions herein involved. Taxpayer contends that on these assumptions alone, it, too, is entitled to like exemption.

Clearly the language of the statute affords no basis for thus disregarding taxpayer's separate corporate existence and activities. True it is that courts will at times pierce through the shell of separate corporate identity, and, to prevent or to defeat fraud, will treat the two bodies as a single entity. To a limited extent too, and for definite purposes, the revenue acts treat affiliated corporations as a tax unit even though one be not a fully owned subsidiary of the other, expressly permitting or requiring consolidated returns. But the fact here urged that ultimately the members of the tax exempt association, because of its ownership of taxpayer's stock, must be the beneficiaries of taxpayer's net income, does not, in the light of elementary principles of statutory construction (Riverdale Co-op. Creamery Ass'n v. Commissioner (C. C. A.) 48 F.(2d) 711), justify an extension to taxpayer of the tax exemption rights expressly conferred only upon association. See Burnet v. Commonwealth Improvement Co., 53 S. Ct. 198, 77 L. Ed. —, December 12, 1932. While membership in association enabled each member indirectly to share in whatever profits taxpayer might earn, it in no sense made them members of taxpayer; taxpayer was not a membership association but an ordinary corporation for profit, with capital represented by shares of stock.

■ Under the statute, an association, to be entitled to exemption, must not only be organized but actually operated in the manner and for the purposes specified. It may be conceded that the broad charter powers present no obstacle. Fruit Growers' Supply Co. v. Commissioner (C. C. A.) 56 F.(2d) 90. If we should assume that association's members could indirectly be deemed members of taxpayer, nevertheless, on this record, we cannot find that the board of Tax Appeals erred in holding that under the Fruit Growers' Supply Co. Case, taxpayer did not so operate as to become tax exempt.

While the Board found that in addition to buying some cheese and butter from outsiders, taxpayer, to meet competition for the trade of certain customers, had to deal in

410

certified milk, and that nothing was bought from outsiders which could be bought from members, we cannot interpret this finding as meaning that these activities with outsiders, however advantageous in order to enable it to meet competition in the sale of members' products, were absolutely necessary rather than commercially desirable. Taxpayer could well have confined itself to the marketing of members' products, even though with smaller profit. No showing, however, was made that would have enabled the Board to determine the profits derived from each of these activities.

Did then taxpayer, even as to the members' produce, operate as a sales agent in the manner and for the purpose specified in the regulations? The proceeds of sales, less necessary selling expenses, were not turned back to members on the basis of quantity of produce furnished by them. On the contrary, by resolution adopted in 1921, profits were to be reserved until further notice, for purchase of real estate, buildings, and equipment. A large surplus was yearly accumulated. There was no showing as to what should be deemed by the Board to be a "reasonable" reserve for these and other permissible purposes within the regulative requirements. Riverdale Co-op. Creamery Ass'n v. Commissioner, supra. See, too, South Carolina Produce Ass'n v. Commissioner (C. C. A.) 50 F.(2d) 742; Producers' Creamery Co. v. United States (C. C. A.) 55 F.(2d) 104. Nor was there any evidence either as to the proceeds of sales or as to necessary selling expenses.

Order affirmed.