### FARMERS UNION CO–OP. CO. OF GUIDE ROCK, NEB., v. COMMISSIONER OF INTERNAL REVENUE.

No. 10772.

Circuit Court of Appeals, Eighth Circuit.

June 17, 1937.

Louis B. Montfort, of Washington, D. C., for petitioner.

John J. Pringle, Jr., Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before STONE, SANBORN, and THOMAS, Circuit Judges.

STONE, Circuit Judge.

This is a petition to review a determination of the Board of Tax Appeals that petitioner is not exempt from income taxation for the year 1928. Petitioner made no return for taxation. The Commissioner assessed a tax and a penalty for failure to make return. Petitioner contended it was not subject to taxation because it was a farmers' co-operative association within section 103 (12) of the Revenue Act of 1928 (45 Stat. 791, 812, 813 [26 U.S.C.A. § 103 note]) which exempts such organizations. The Board sustained the Commissioner.

Petitioner presents here four issues: (1) That what is sought to be taxed as income is not income; (2) that it is within the exemption of section 103 (12) ; (3) that the Board erred in denying petitioner's motion to amend its findings of facts in the respects set forth in the motion; (4) that the Board erroneously admitted certain evidence and erroneously excluded certain other evidence—both over objection of the petitioner.

It is unnecessary to discuss and rule on the action of the Board in denying the motion to amend its findings or in admitting or excluding evidence. This is true because had the Board ruled in favor of petitioner as to all of these matters, it would not have altered the facts which are determinative of this controversy. This leaves for examination the two contentions: (1) Was what is here sought to be taxed "income" within the meaning of the Sixteenth Amendment; and (2) even if such is taxable "income," was petitioner exempt from income taxation in 1928 because within the exemption expressed in section 103 (12) of the Revenue Act of 1928?

### (1) Taxable "Income."

The matter sought to be taxed as income **is** the net earning of petitioner resulting from the following method of doing business: Petitioner was organized, in 1915, under a statute of Nebraska permitting organization of corporations described as "Co-operative Companies." This statute defined a "co-operative company" as being one "which authorizes the distribution of its earnings *in part*,[1] or wholly, on the basis of, or in proportion to the amount of property bought from or sold to members, or of labor performed, or other service rendered to the corporation." R.S.Neb.1913, p. 260, § 733. Among the corporate powers was "to make by-laws for the manage-

---

[1] All italics within quotations set forth in this opinion are added.

ment of its affairs, and to provide therein the terms and limitations of stock ownership, and *for the distribution of its earnings.*" R.S.Neb.1913, p. 261, § 735.

The articles of incorporation of petitioner provided for quite broad and general powers which are not stated here because they do not affect the issues in this case except that they provided for capital stock and stockholders. The by-laws (in force in 1928) provided as follows:

"Any person who is a member of the Farmers' Educational and Co-operative Union and in good standing may be a stockholder in this corporation.

\* \* \* \* , \* \*

"Article IV.

"Dividends and Net Profits

"Section 1. The Board of Directors shall set aside from time to time such sums from the net profits as in their judgment they shall deem desirable for a surplus.

"Section 2. *After taking from net profits such surplus as stated in section 1, then there shall be paid an annual dividend from the net profits of 8 per cent per annum on the par value of all the paid in capital stock of this corporation;* provided, however, if such remaining net profits are insufficient to pay such 8 per cent, then in that event such per cent shall be paid as said remaining net profits amount to.

"Section 3. There shall be and there is hereby created a fund to be known as the 'Contingent Reserve Fund' which fund shall be composed of such percentage of the pro-rated net profits credited to individual members as hereinafter provided as the Board of Directors of this corporation shall annually order diverted to such fund, and said Board of Directors is hereby authorized to divert annually not to exceed 25 per cent of said annual individual credits to said 'Contingent Reserve Fund' until said 'Contingent Reserve Fund' amounts to the par value of the paid in capital stock.

"Section 4. No interest shall be paid on said 'Contingent Reserve Fund' and no part of same shall be paid out or withdrawn, except when a member dies, sells shares or · becomes ineligible to membership in this corporation in which event the total amount diverted from his individual credit to this fund shall be paid to him or his legal representative upon demand, without interest.

"Section 5. *All remaining net profits,* shall be pro-rated *to stockholders* in proportion to the amount of business they have done with corporation during business year.

"Section 6. All stockholders must be in good standing with the F. E. & C. U. and shall have paid their dues prior to May 1 in order to receive patronage dividends from the years business."

In 1928, there were outstanding 1931 shares of . stock (par value $10) held by about 220 individuals. The business then being transacted by petitioner consisted of running a grain elevator, a feed store, a general merchandise store, the purchase, the sale, and shipping of grain and other farm products, and handling machinery supplies and repairs. Its plan of purchase from producers and others was to pay the market price less estimated costs to it of handling. Its plan of sale to stockholders and others was to add to its cost price the estimated cost to it of handling. If these received estimates of costs of handling exceed the actual costs therefor for any year, there resulted a cash balance for disposition by the directors in accordance with the by-laws. In 1928, there was such a balance of $11,882.76. This is the sum claimed to be taxable as income for that year.

Petitioner contends that this balance, so earned, is not income within the Sixteenth Amendment to the Constitution but is "accumulated savings." The supporting arguments are as follows: This balance is "accumulated patron savings" and, as such, is: "monies belonging to the patron which he has advanced in a cooperative transaction knowing it will eventually be returned to him or used for him. It is not the property of the petitioner and never was. The petitioner is a bailee that must return the bailment when the co-operative transaction is completed, unless used for a legitimate legal purpose.

"The petitioner experiences no gain from capital or through sale or conversion of capital assets, because the savings were legally held as assets and from the assets debts were paid. \* \* \*

"In farmer cooperative activities the element of departure from ordinary corporate economic practice is found in the fact that the benefits resulting from the cooperative buying and selling is enjoyed by the patrons in proportion to their individual dealings with the cooperative as-

sociation, rather than in proportion to the capital contributed by each to the conduct of the business. It is this difference of economic principle governing the distribution of wealth that in general is the line of demarcation between what is income and what is not income.

"And this is true even though the receipt of the benefits are immediate or postponed while the cooperative association accumulates a reserve for contingencies or increases its working capital for the conduct of its business.

"Accumulated farmer patron savings are not income and are tax exempt even though not distributed, being a liability of the cooperative association to its members under the laws of the State of Nebraska and under the charter and by-laws of the association."

The argument that petitioner is merely a bailee of this money and not the owner thereof is unsound. Although organized for cooperative purposes, petitioner is a separate legal entity—a corporation. Its relation to this money must be determined by the law under which it was organized and operates. Among the statutory powers are "to make by-laws for the management of its affairs, and to provide therein * * * for the distribution of its earnings." Such by-laws were made. Those earnings might be (under the statute) and were (under the by-laws) usable to pay dividends of not exceeding 8 per cent. on corporate stock and usable for other corporate uses *before* being subject to distribution as patronage dividends. Also, such corporations can sue and be sued and hold such real and personal property as necessary for their legitimate businesses. R.S.Neb.1913, p. 261, § 735. In fact, such corporations seem to possess all of the main attributes of an ordinary business corporation except as to the basis of distribution of their net earnings, which instead of being distributed on some stock share basis must *"in part,"* at least, be distributed "on the basis of, or in proportion to the amount of property bought from or sold to members, or of labor performed, or other service rendered to the corporation." R.S.Neb.1913, p. 260, § 733. Clearly this money is property of the corporation as genuinely and truly as is the grain elevator or the stock of merchandise owned by it. While those who might be entitled to

patronage dividends have, in a sense, an interest in the money, it is a character of interest not greater, if as great, as that of a stockholder in an ordinary corporation. Such interest never ripens into an individual ownership or right of ownership until and if a patronage dividend be declared. Fruit Growers' Supply Co. v. Commissioner, 56 F.(2d) 90, 93 (C.C.A.9); and see Penn Mutual Life Ins. Co. v. Lederer, 252 U.S. 523, 40 S.Ct. 397, 64 L.Ed. 698. Until such declaration, the money is the property solely of the petitioner.

The argument that this balance constituted no gain "because the savings were legally held as assets and from the assets debts were paid" cannot be approved. This balance was the difference between income and outgo on the business of petitioner during the year 1928. Had the balance gone the other way, there would clearly have been a loss. Just as clearly, this is a gain. Of course this balance constituted an asset. So does any property of this or any corporation. The retention of this asset for payment of debts instead of using it to pay stock or patronage dividends and its use in debt payment have no bearing upon its character as a gain or profit.

There is no merit in the argument that the character of distribution of earning of such co-operative corporation prevents this balance being gain in a taxable sense. The argument is, in essence, that such corporations are not for profit; that in the practical operation of such, it is not possible to know at the time something is bought or sold by the corporation just what the operating cost of the corporation for the year will be, therefore, the price is merely as close an estimate thereof as possible with the assurance that any overestimate of expense will be returned pro rata to the customer at the end of the year when the operating expense has become definite; the ultimate result being that there would be no profit to the corporation at the end of the year. This argument would acquire force[2] and would require examination here if such were the situation of petitioner. The reason why such argument is not here applicable is that distribution of earnings was not required by the governing statutes, the articles of incorporation, or the by-laws to be confined to patrons. In fact, the statute permitted such earnings to be partly diverted to holders of shares of stock;

[2] See Board of Underwriters of City of Duluth v. Commissioner, 26 B.T.A. 860.

the articles of incorporation provided for stock; and the by-laws provided that stock dividends of eight percentum must be paid before any patronage dividends could be paid. As organized, and within the statutes, petitioner must pay 8 per centum dividends to the contributors of its capital stock before any patronage dividend—that is, any readjustment with its patrons of its estimate of operating expenses—was possible. In short, there must be 8 per centum profit paid out on the capital stock before the above urged co-operative arrangement came into effective operation.

We have examined the cases cited by petitioner [Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570; Doyle v. Mitchell Bros. Co., 247 U.S. 179, 38 S.Ct. 467, 62 L.Ed. 1054; Board of Fire Underwriters v. Commissioner, 26 B.T.A. 860; McCormick, Trustees, v. Commissioner, 26 B.T.A. 1172, affirmed 68 F. (2d) 653 (C.C.A.7); Pryor and Lockhart Development Co. v. Commissioner, 26 B.T.A. 1054 and Shepherd Syndicate v. Commissioner, 26 B.T.A. 1062, both affirmed Com'r v. Brouillard, 70 F.(2d) 154 (C.C.A.10)] and find nothing in any of them opposed to the views above expressed.

As stated above, if petitioner had been organized and operated on a purely co-operative basis where all annual net earnings were apportioned to all of the *patrons* during the year, there might be here a more serious question as to whether such earnings constituted "income" within the Amendment. But where a portion of such earnings are usable to pay dividends on capital stock without reference to patronage by stockholders, there exists a situation containing the feature of private profit from the enterprise. Such being the situation here, we must conclude that this balance of income over outgo in 1928 was a gain subject to taxation under the Sixteenth Amendment.

### (2) Exemption.

Petitioner contends it is exempt from income taxation because it is a farmers' co-operative within section 103 (12) of the Act. Two arguments are advanced: (a) Being properly organized within the statutes of Nebraska covering co-operative organizations, it is within the above section which exempts farmers' co-operative organizations; (b) the organization and operation of petitioner bring it within the section.

(a) It is not questioned that petitioner is organized and operates within the state statute governing farmers' co-operative associations. The contention of petitioner is that, being so organized and so operating, it is within section 103 (12). It relies upon United States v. Cambridge Loan & Building Company, 278 U.S. 55, 49 S.Ct. 39, 73 L.Ed. 180, to sustain this position.

Whether a person is within the federal taxing statutes depends solely upon those statutes. State laws do not alter this. Burk-Waggoner Oil Association v. Hopkins, 269 U.S. 110, 114, 46 S.Ct. 48, 49, 70 L.Ed. 183; Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 116; Weiss v. Wiener, 279 U.S. 333, 337, 49 S.Ct. 337, 338, 73 L.Ed. 720; Anderson v. United States (Ct.Cl.) 15 F.Supp. 216, 224. In the Cambridge Loan & Building Company Case, supra, the exemption of "domestic building and loan associations" was involved. The issue was the construction of the language of the exemption expressed in the act to determine whether the Cambridge Loan & Building Company was within the statutory definition. The court said (278 U. S. 55, at page 59, 49 S.Ct. 39, 40, 73 L.Ed. 180): "The statutes speak of 'domestic' associations, that is, associations sanctioned by the several States. They must be taken to accept with the qualifications expressly stated, what the States are content to recognize, unless there is a gross misuse of the name." A vital part of this statement is "with the qualifications expressly stated," meaning the qualifications in the revenue acts. The decision and language in that case is of no aid here because the statutory exemption before us is quite specific in its definition of the kind of associations exempted. Riverdale Co-operative Creamery Ass'n v. Commissioner, 48 F. (2d) 711, 714 (C.C.A.9). It is:

"(12) Farmers', fruit growers', or like associations organized and operated on a cooperative basis (a) for the purpose of marketing the products of members or other producers, and turning back to them the proceeds of sales, less the necessary marketing expenses, on the basis of either the quantity or the value of the products furnished by them, or (b) for the purpose of purchasing supplies and equipment for the use of members or other persons, and turning over such supplies and equipment to them at actual cost, plus necessary expenses. Exemption shall not be denied any such association because it has capital

stock, if the dividend rate of such stock is fixed at not to exceed the legal rate of interest in the State of incorporation or 8 per centum per annum, whichever is greater, on the value of the consideration for which the stock was issued, and if substantially all such stock (other than nonvoting preferred stock, the owners of which are not entitled or permitted to participate, directly or indirectly, in the profits of the association, upon dissolution or otherwise, beyond the fixed dividends) is owned by producers who market their products or purchase their supplies and equipment through the association; nor shall exemption be denied any such association because there is accumulated and maintained by it a reserve required by State law or a reasonable reserve for any necessary purpose. Such an association may market the products of nonmembers in an amount the value of which does not exceed the value of the products marketed for members, and may purchase supplies and equipment for nonmembers in an amount the value of which does not exceed the value of the supplies and equipment purchased for members, provided the value of the purchases made for persons who are neither members nor producers does not exceed 15 per centum of the value of all its purchases." Revenue Act 1928, § 103 (12), 26 U.S.C.A. § 103 note.

The contest here is whether petitioner has brought itself within this expressed definition and not whether it is a farmers' cooperative association within the statutes of Nebraska. Whether it is within or without such state statutes is not relevant.

(b) Is petitioner within the defined class of this exemption provision. We need not examine the respects in which it is within the definition. It is sufficient to ascertain if it fails in any requirement of this statute. The statute requires such association to be "organized and operated on a cooperative basis": "(a) for the purpose of marketing the products of members or other producers, and turning back to them the proceeds of sales, less the necessary marketing expenses, on the basis of either the quantity or the value of the products furnished by them, or (b) for the purpose of purchasing supplies and equipment for the use of members or other persons, and turning over such supplies and equipment to them at actual cost, plus necessary expenses." It will be observed that this section requires not only that an association to be exempt must be "organized" for the stated purposes, but that it must be "operated" therefor. Each of these requirements must be fulfilled to bring an association within the section. Burr Creamery Corporation v. Commissioner, 62 F.(2d) 407, 409 (C.C.A.9), certiorari denied 289 U.S. 730, 53 S.Ct. 527, 77 L.Ed. 1479.

The above quotation from section 103 (12) contains a requirement that, in marketing the products "of members or *other producers*," there shall be turned back to them "the proceeds of sales, less the necessary marketing expenses" on the basis stated. A similar requirement is that sales to patrons—both "members or *other persons*"—shall be "at actual cost, plus necessary expenses." The thing here important is the requirement (both as to marketing and as to sales) that *nonmember* patrons are to be dealt with on a non-profit basis. A substantial part of petitioner's business—both as marketing agent and as merchandise seller—was with nonmember patrons.

Petitioner could not accord to nonmember patrons this nonprofit treatment required by the act because of the structure of its organization. Article IV of its by-laws entirely and effectively prevented petitioner from according to nonmember patrons the treatment required by the section. After providing (in sections 1 to 4 of the by-laws) for several allowable dispositions of "net profits" to surplus, stock dividends, and contingent reserve fund, this article (section 5) provides that: "All remaining net profits, shall be pro-rated to *stockholders* in proportion to the amount of business *they* have done with corporation during business year." Thus, nonmember patrons were wholly excluded from any possible participation. Also, petitioner failed to meet this statutory requirement in respect to the manner in which it was "operated" because there is no showing that it ever actually operated except in accordance with the plan of its organization. By so doing, petitioner failed to meet the above requirements of the section. Producers' Creamery Co. v. United States, 55 F.(2d) 104 (C.C.A.5).

Failing to meet the requirements of this section, it cannot claim the exemption accorded thereby only to such as placed themselves within its provisions.

The determination of the Board was correct. Its order is affirmed, and the petition to review dismissed.