FARMERS CO–OPERATIVE CO. OF WA-
HOO, NEB., v. UNITED STATES.

No. 42067.

Court of Claims.
May 2, 1938.

Louis B. Montfort, of Washington, D. C., for plaintiff.

Guy Patten, of Washington, D. C., and James W. Morris, Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

This suit is brought on six claims for refund of taxes alleged by plaintiff to have been overpaid for the years 1923 to 1928, inclusive.

The plaintiff is a co-operative association. The issue in the case is whether it is exempt from taxation on its profits under sections 231 (11) of the Revenue Acts of 1921 and 1924, 42 Stat. 253, 43 Stat. 282, section 231 (12) of the Revenue Act of 1926, 44 Stat. 39, and section 103 (12) of the Revenue Act of 1928, 26 U.S.C.A. § 103 note. The parties agree that, if plaintiff is not entitled to exemption as a co-operative organization, its taxes have been correctly determined by the Commissioner of Internal Revenue.

It appears that the plaintiff is a corporation organized in 1914 under the laws of the state of Nebraska, having a capital stock, and being owned and controlled by farmers living in the vicinity of Wahoo, Neb., where it has its principal place of business. The general nature of the business transacted was the purchase, sale, storage, and shipping of farm products and sale of articles used by farmers. The business also included the conducting of a general mercantile store and a grain elevator.

Under the by-laws in force during the years involved herein, in order to become a member or stockholder, one must be a farmer, retired farmer, or a person approved by the board of directors, and the owner of at least one share of stock. No person was entitled to any interest, dividends, or profits except a stockholder.

The by-laws further provide that at the close of each year's business, after the expenses of doing business have been paid, an allowance for depreciation shall be made and an amount equal to 5 per cent. of the capital stock shall be carried into a reserve for contingencies, and then a dividend not to exceed 8 per cent. on the capital stock shall be paid to the stockholders; that, after the above distributions, the company shall set aside not less than 5 per cent. of the earnings or savings as a surplus fund to be used in conducting the business, and any remaining savings are to be distributed as a patronage dividend among the stockholder patrons on the basis of the amount of business done by each.

Business was done with both members and nonmembers upon the same basis, i. e., plaintiff marketed the farm products of producers, advancing to all alike the estimated market value of such products, less a margin estimated to take care of the expenses of the sale thereof; and sold supplies and equipment on the basis of the cost thereof, plus freight and the estimated cost of handling same. The books of plaintiff were closed at the end of each year, showing the accumulation of savings resulting from overestimating the aforesaid costs of doing business.

The value of the purchases made for, and supplies furnished to, persons who were neither members nor producers, was approximately 30 per cent. of the total value of such business transacted with all patrons during each of the years involved herein.

From its organization until 1920 plaintiff paid the recited percentages into its reserve for contingencies, its surplus fund, paid 8 per cent. dividends on its capital stock, and paid patronage dividends to its stockholder patrons according to the business done with each. No patronage dividends were paid in cash to nonmember patrons.

After 1919 no patronage dividends at all were paid to either member or nonmember patrons, but the savings or profits—after paying dividends on the stock—were used in the extinguishment of plaintiff's fixed and current liabilities, which was finally accomplished in full about 1933.

During the years involved herein, the interest dividends on the capital stock were cumulative and payable, in case of a deficiency, out of the net profits of the next or succeeding years; during this period plaintiff paid 8 per cent. on its outstanding capital stock.

No account or credit to the individuals was set up on the books of plaintiff relative

to patronage dividends attributable to business done with nonmember patrons during the period involved in this case. During this period plaintiff built up a reserve for contingencies amounting to $2,750 at the end of 1922, to $16,715 at the end of 1928, and accumulated a surplus amounting to $6,760.80 at the end of 1922, to $16,248.43 at the end of 1928.

On January 16, 1930, a resolution was adopted amending the by-laws by providing that in the future patronage dividends should apply to all business done with members and nonmembers alike and that the word " 'stockholder' means that, before cash patronage dividends should be actually paid to non-members, they must use such portion of this patronage dividend that has been actually declared, to purchase sufficient capital stock of our association and qualify as bona fide members."

Both the 1921 and 1926 acts provided in substance that farmers' co-operative associations organized for the purpose of marketing the products of members or other producers, and turning back to them the proceeds of sales, less the necessary marketing expenses, or for the purpose of purchasing supplies and equipment for the use of members or other persons, and turning over such supplies and equipment to them at actual cost, plus necessary expenses, should be exempt.

Counsel for defendant make their main objection to plaintiff's claim for exemption on the ground that nonmembers did not participate in the savings resulting from the business done with them on the basis either of the quantity or the value of the products furnished, or supplies purchased by them, as required by the statute; nor were such supplies turned over to them at actual cost plus necessary expenses. It is not claimed that the fact that plaintiff paid interest dividends to its stockholders, or that it accumulated a reserve for contingencies or other necessary purposes, would subject the plaintiff to tax if it complied with the other conditions necessary to entitle it to exemption under the law, but the Treasury Regulations provide in article 532 of Regulations 74 that: "If the proceeds of the business are distributed in any other way than on such a proportionate basis, the association does not meet the requirements of the Act and is not exempt."

This regulation applies to all the years involved in the case and we think it is a fair construction of the law. If the regula-

tion is valid, when transactions are had with or for nonmembers, the profits therefrom, less necessary operating expenses, must be returned to such patrons if the organization is to be exempt. We think the evidence shows plainly that the plaintiff did not comply either with the regulation or the statute.

During the period involved in the case, approximately 30 per cent. of all business transacted was with nonmembers, and it may be assumed that a corresponding portion of the profit realized by plaintiff in the operation of its business was obtained therefrom. During the period involved, after paying all expenses of running the business, providing for depreciation, and paying 8 per cent. interest on the capital stock, the profits realized by plaintiff were sufficient to build up a surplus at the end of 1928 of $16,248.43 and, in addition, a contingency reserve of $16,715, a total of $32,963.43, or more than half of the par value of its outstanding capital stock. During this period the plaintiff's by-laws restricted the right to receive any interest, dividends, or profits to its stockholders. In fact, under the by-laws which were in force at this time, there was no way in which nonmembers could acquire an interest in the surplus and reserve which had been created. Besides this, it appears that no account or credit was ever set up on the books with reference to patronage dividends attributable to the business done with nonmembers, and there was no basis upon which they could make a legal claim to share in the profits of the business which had been done with them. It is clear therefore that plaintiff did not comply with the condition of tax exemption, namely, that the association shall be organized and operated for the purpose of turning back to the "members or other producers" the profits or savings on the basis of the quantity or value of the business done with each of such persons.

The Board of Tax Appeals has held in many cases that there must be an equality of the treatment of members and nonmembers in order to make the association exempt, and there are a number of decisions to the same effect by the federal courts. Counsel for plaintiff contend that some of these cases involve different facts, but the rules and principles laid down by the courts apply to the case at bar.

Plaintiff cites the case of Fruit Growers' Supply Co. v. Commissioner, 9 Cir., 56 F.2d 90, to support the contention that, where a

taxpayer engages in noncooperative activities as well as those which are cooperative, it will still be exempt as to the cooperative activities and taxable only on the remainder of its business. But that case was based upon different facts and involved an altogether different question. The case of Central Co-operative Oil Association v. Com'r, 32 B.T.A. 359, is also cited, but the decision therein instead of sustaining plaintiff's contention is to the contrary.

Plaintiff also contends that under the statute of Nebraska it is rated as a cooperative and consequently should be exempt. It is hardly necessary to say that the status of the plaintiff for federal taxation must be controlled by federal laws.

It follows that plaintiff's petition must be dismissed, and it is so ordered.