FERTILE CO-OPERATIVE DAIRY ASS'N
v. HUSTON, Collector of Internal
Revenue.
No. 11853.

Circuit Court of Appeals, Eighth Circuit.
April 26, 1941.

Frank J. Enbusk, of Mason City, Iowa, for appellant.

Michael H. Cardozo, IV, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Sp. Asst. to the Atty. Gen., and Edward G. Dunn, U. S. Atty., of Mason City, Iowa, on the brief), for appellee.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

The question presented is whether the business of a farmers' co-operative marketing association was being conducted in such a manner as to entitle it to tax exemption under section 101 of the Revenue Acts of

1936 and 1938, 26 U.S.C.A. Int.Rev.Code, § 101.[1]

The Commissioner of Internal Revenue denied the association's claim for exemption and its subsequent claims for refunds, and it then brought suit under 28 U.S.C.A. § 41, to recover the amount of income, excess profits, and capital stock taxes which it had been obliged to pay for the years 1936 to 1939, inclusive. The District Court held that the association was not exempt from the payment of such taxes, because it had failed to accord nonmember patrons equal treatment with its members, and dismissed the action. The association has appealed.

The association was engaged in collecting cream from producers, manufacturing it into butter, and marketing the product. In 1936 twenty-nine per cent of its cream came from nonmember patrons, in 1937 twenty-five per cent, and in 1938 ten per cent. The association paid its patrons, both members and nonmembers, the same amount in cash per pound for the butterfat received from them, such payments being made monthly by a distribution of the net proceeds derived from the butter sold, after deducting all operating expenses and such sums as the board of directors deemed it advisable to withhold for business needs. During the three-year period here involved, besides paying operating expenses, the board of directors had withheld and made additions to the association's surplus in the sum of $872.37, and had increased its plant and equipment account in the amount of $2,480.02, by the purchase of a new churn for $1,500 and an expenditure of over $900 on additions to the refrigeration system. There is a suggestion in the testimony that the latter expenditure also included some repairs on the refrigeration system, but since the record before us does not indicate their nature or extent, and since the entire amount was set up on the books of the association as a plant and equipment account augmentation, it must be treated as representing capital assets here.

The Revenue Acts involved provided that such an association should not be denied tax exemption simply "because there is accumulated and maintained by it a reserve required by State law or a reasonable reserve for any necessary purpose." Article 101(12)-1 of Treasury Regulations 94,[2] promulgated under these Revenue Acts, also provided that "The accumulation and maintenance of a reserve required by State statute, or the accumulation and maintenance of a reasonable reserve or surplus for any necessary purpose, such as to provide for the erection of buildings and fa-

---

[1] This section provided:

"The following organizations shall be exempt from taxation under this chapter—

\* \* \* \* \*

"(12) Farmers', fruit growers', or like associations organized and operated on a cooperative basis (a) for the purpose of marketing the products of members or other producers, and turning back to them the proceeds of sales, less the necessary marketing expenses, on the basis of either the quantity or the value of the products furnished by them, or (b) for the purpose of purchasing supplies and equipment for the use of members or other persons, and turning over such supplies and equipment to them at actual cost, plus necessary expenses. Exemption shall not be denied any such association because it has capital stock, if the dividend rate of such stock is fixed at not to exceed the legal rate of interest in the State of incorporation or 8 per centum per annum, whichever is greater, on the value of the consideration for which the stock was issued, and if substantially all such stock (other than nonvoting preferred stock, the owners of which are not entitled or permitted to participate, directly or indirectly, in the profits of the association, upon dissolution or otherwise, beyond the fixed dividends) is owned by producers who market their products or purchase their supplies and equipment through the association; nor shall exemption be denied any such association because there is accumulated and maintained by it a reserve required by State law or a reasonable reserve for any necessary purpose. Such an association may market the products of nonmembers in an amount the value of which does not exceed the value of the products marketed for members, and may purchase supplies and equipment for nonmembers in an amount the value of which does not exceed the value of the supplies and equipment purchased for members, provided the value of the purchases made for persons who are neither members nor producers does not exceed 15 per centum of the value of all its purchases. Business done for the United States or any of its agencies shall be disregarded in determining the right to exemption under this paragraph."

[2] This regulation, which is still in effect, appears in 26 C.F.R. 3.101(12)-1.

cilities required in business or for the purchase and installment of machinery and equipment or to retire indebtedness incurred for such purposes, will not destroy the exemption."

■ The association contends that the additions which it made to its surplus and its expenditures for plant equipment during the period involved were reasonable and necessary, and under the provisions of the statute and the treasury regulations, would not defeat its right to tax exemption. The burden of course would rest on the association to establish, by direct evidence or by evidence from which it was soundly inferable, that any reserve or surplus which it had set up and any expenditures for additional equipment which it had made were reasonable and necessary in the situation. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212. The proof before us is not very satisfactory in this respect, but the matter is in any event not controlling here, so it need not be further discussed.

■ Even if it had been incontrovertibly established that the surplus apportionment and equipment expenditures in question were reasonable and necessary, they would still have to involve an equality of treatment, as between nonmember and member patrons. The provision in the revenue act authorizing a reasonable reserve to be set up and maintained for any necessary purpose, and the treasury regulations construing the term "necessary purpose" to include the erection of buildings and other facilities, the purchase and installation of machinery and equipment, and the retirement of any indebtedness incurred for such purposes, were not intended as a waiver in any respect of that equality of treatment which is part of the necessary foundation for the tax exemption. Unless the business of nonmember patrons is being handled wholly on a non-profit basis, the equality of treatment necessary for tax exemption obviously does not exist. Farmers Union Cooperative Co. v. Commissioner of Internal Revenue, 8 Cir., 90 F.2d 488. If part of the proceeds of nonmembers' products is to be used to create or maintain a surplus and to make additions to the capital assets of the association, without allowing them a proportionate distributive interest in the permanent value contributed by such surplus accumulations or capital assets additions, it must be held that the association to that extent is being operated for profit to its members, as

against nonmember patrons, and that it is not exempt from taxation.

■ The business of nonmembers may of course properly be made to carry its just share of operating expenses, actual depreciation of plant and equipment, and dividends on existing capital stock recognized by the revenue acts. But, if such business is also to be forced to bear part of the burden of accumulating other permissible surplus, and of making reasonable and necessary additions to what constitute or are equivalent to capital assets of the association, it is clear that this must be done in a manner that will permit no profit to inure to association members therefrom, on dissolution or otherwise, or else the association cannot remain exempt from taxation. Provision must at least have been made, by appropriate enabling action on the part of the association and by adequate protective entries on its books and records, for nonmembers in such a situation as is here involved to share ratably with members, in an ultimate liquidation of the association's assets, on the basis of their comparative contributions thereto.

■ It may be assumed here that the association would have power under the statutes of Iowa, pursuant to which it was organized, and under its articles of incorporation, to make such a protective recognition in favor of nonmember patrons, on a partial sale or final distribution of its assets, but whether it has such power or not, is not controlling on the question before us. For informational purposes, it may be stated that the association is a nonstock corporation, issuing certificates of membership for fifty cents each to such producers of dairy products as it chooses to admit to membership. It was the successor of another cooperative corporation, whose capital stock it liquidated at par value out of such corporation's assets, and whose plant and equipment it in practical effect received and held as a gift. On any subsequent liquidation of these assets, in part or in whole, after payment of the charges recognized by the statute, Code of Iowa 1939, § 8512.48, distribution would naturally be made on some basis among the members of the association. The sums exacted from nonmember patrons for permanent surplus and capital assets additions, during the period here involved, would constitute part of the assets so distributable, and, as we have previously pointed out, would be equivalent to a profit at the ex-

278

pense of nonmember patrons. This profit and the inequality of treatment resulting to nonmembers therefrom must be regarded as having destroyed the association's right to tax exemption. Farmers Union Co-operative Co. v. Commissioner of Internal Revenue, 8 Cir., 90 F.2d 488; Farmers Co-operative Co. v. United States, Ct. Cl., 23 F.Supp. 123; Burr Creamery Corporation v. Commissioner of Internal Revenue, 9 Cir., 62 F.2d 407.

The association relies principally upon Crooks v. Kansas City Hay Dealers' Association, 8 Cir., 37 F.2d 83, but the basis of the court's decision in that case seems to have been that, under the facts in the record, the possibility of any distribution was regarded as contingently remote and wholly speculative. This was particularly true, perhaps, under the stipulation in the record in that case, commented on in Northwestern Jobbers' Credit Bureau v. Commissioner of Internal Revenue, 8 Cir., 37 F.2d 880, that no part of the surplus accumulated could ever inure to the benefit of any member or other individual. Such is not the situation in the present case.

The judgment of the District Court must be affirmed.