# PENN MUTUAL LIFE INSURANCE COMPANY *v.* LEDERER, COLLECTOR OF INTERNAL REVENUE.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 499. Argued March 22, 23, 1920.—Decided April 19, 1920.

The Income Tax Law of October 3, 1913, c. 16, 38 Stat. 172, § II G. (b), provides that life insurance companies "shall not include as income in any year such portion of any actual premium received from any individual policyholder as shall have been paid back or credited to such individual policyholder, or treated as an abatement of premium of such individual policyholder, within such year," and that "there be deducted from gross income . . . the sums other than dividends paid within the year on policy and annuity contracts." *Held*, that money derived by a mutual company from redundancy of premiums paid in previous years, and paid to policyholders during the tax year as dividends in cash, not applied in abatement or reduction of their current premiums, should not be deducted from premium receipts in computing gross income. P. 527.

No aid in construing an act of Congress can be derived from the legislative history of another passed six years later. P. 537.

258 Fed. Rep. 81, affirmed.

THE case is stated in the opinion.

*Mr. George Wharton Pepper* for petitioner.

*Mr. Assistant Attorney General Frierson* for respondent.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

The Penn Mutual Life Insurance Company, a purely mutual legal reserve company which issues level-premium

insurance, brought this action in the District Court of the United States for the Eastern District of Pennsylvania to recover $6,865.03 which was assessed and collected as an income tax of one per cent. upon the sum of $686,503, alleged to have been wrongly included as a part of its gross income, and hence also of its net income, for the period from March 1, 1913, to December 31, 1913. The latter sum equals the aggregate of the amounts paid during that period by the company to its policyholders in cash dividends which were *not* used by them during that period in payment of premiums. The several amounts making up this aggregate represent mainly a part of the so-called redundancy in premiums paid by the respective policyholders in some previous year or years. They are, in a sense, a repayment of that part of the premium previously paid which experience has proved was in excess of the amount which had been assumed would be required to meet the policy obligations (ordinarily termed losses) or the legal reserve and the expense of conducting the business.[1] The District Court allowed recovery of the full amount with interest. (247 Fed. Rep. 559.) The Circuit Court of Appeals for the Third Circuit, holding that nothing was recoverable except a single small item, reversed the judgment and awarded a new trial. (258 Fed. Rep. 81.) A writ of certiorari from this court was then allowed. (250 U. S. 656.)

Whether the plaintiff is entitled to recover depends wholly upon the construction to be given certain provisions in § II G. (b) of the Revenue Act of October 3, 1913, c. 16, 38 Stat. 114, 172, 173. The act enumerates among

---

[1] The manner in which mutual level-premium life insurance companies conduct their business, and the nature and application of dividends are fully set forth in *Mutual Benefit Life Ins. Co.* v. *Herold*, 198 Fed. Rep. 199; *Connecticut General Life Ins. Co.* v. *Eaton*, 218 Fed. Rep. 188; *Connecticut Mutual Life Ins. Co.* v. *Eaton*, 218 Fed. Rep. 206.

the corporations upon which the income tax is imposed, "every insurance company" other than "fraternal beneficiary societies, orders, or associations operating under the lodge system or for the exclusive benefit of the members of a fraternity itself operating under the lodge system." It provides (G. (b) pp. 172–174) how the net income of insurance companies shall be ascertained for purposes of taxation, prescribing what shall be included to determine the gross income of any year, and also specifically what deductions from the ascertained gross income shall be made in order to determine the net income upon which the tax is assessed. Premium receipts are a part of the gross income to be accounted for.

In applying to insurance companies the system of income taxation in which the assessable net income is to be ascertained by making enumerated deductions from the gross income (including premium receipts) Congress naturally provided how, in making the computation,[1] repayment of the redundancy in the premium should be dealt with. In a mutual company, whatever the field of its operation, the premium exacted is necessarily greater than the expected cost of the insurance, as the redundancy in the premium furnishes the guaranty fund out of which extraordinary losses may be met, while in a stock company they may be met from the capital stock subscribed. It is of the essence of mutual insurance that the excess in the premium over the actual cost as later ascertained shall be returned to the policyholder. Some payment to the

---

[1] The percentage of the redundancy to the premium varies, from year to year, greatly, in the several fields of insurance, and likewise in the same year in the several companies in the same field. Where the margin between the probable losses and those reasonably possible is very large, the return premiums rise often to 90 per cent. or more of the premium paid. This is true of the manufacturers' mutual fire insurance companies of New England. See Report Massachusetts Insurance Commissioner (1913), vol. I, p. 16.

policyholder representing such excess is ordinarily made by every mutual company every year; but the so-called repayment or dividend is rarely made within the calendar year in which the premium (of which it is supposed to be the unused surplus) was paid. Congress treated the so-called repayments or dividends in this way (p. 173):

(a) Mutual fire companies "shall not return as income any portion of the premium deposits returned to their policyholders."

(b) Mutual marine companies "shall be entitled to include in deductions from gross income amounts repaid to policyholders on account of premiums previously paid by them and interest paid upon such amounts between the ascertainment thereof and the payment thereof."

(c) Life insurance companies (that is both stock and strictly mutual) "shall not include as income in any year such portion of any actual premium received from any individual policyholder as shall have been paid back or credited to such individual policyholder, or treated as an abatement of premium of such individual policyholder, within such year."

(d) For all insurance companies, whatever their field of operation, and whether stock or mutual, the act provides that there be deducted from gross income "the net addition, if any, required by law to be made within the year to reserve funds and the sums other than dividends paid within the year on policy and annuity contracts."

The Government contends, in substance, for the rule that in figuring the gross income of life insurance companies, there shall be taken the aggregate of the year's net premium receipts made up separately for each policyholder.[1] The Penn Mutual Company contends for the

---

[1] A separate account is kept by the company with each policyholder. In that account there is entered each year the charges of the premiums payable and all credits either for cash payments or by way of credit of dividends, or by way of abatement of premium.

rule that in figuring the gross income there shall be taken the aggregate full premiums received by the company less the aggregate of all dividends paid by it to any policyholder by credit upon a premium or by abatement of a premium and also of all dividends whatsoever paid to any policyholder. in cash whether applied in payment of a premium or not. The non-inclusion clause, (c) above, excludes from gross income those premium receipts which were actually or in effect paid by applying dividends. The company seeks to graft upon the clause so restricted a provision for what it calls non-including, but which in fact is deducting, all cash dividends not so applied. In support of this contention the company relies mainly, not upon the words of the statute, but upon arguments which it bases upon the nature of mutual insurance, upon the supposed analogy of the rules prescribed in the statute for mutual fire and marine companies and upon the alleged requirements of consistency.

*First:* The reason for the particular provision made by Congress seems to be clear: Dividends may be made, and by many of the companies have been made largely, by way of abating or reducing the amount of the renewal premium.[1] Where the dividend is so made the actual premium receipt of the year is obviously only the reduced amount. But, as a matter of bookkeeping, the premium is

---

[1] The dividend provision of the Mutual Benefit Life Insurance Company involved in the *Herold Case, supra,* 198 Fed. Rep. 199, 204, was, in part: "After this policy shall have been in force one year, each year's premium subsequently paid shall be subject to reduction by such dividend as may be apportioned by the directors." The dividend provision in some of the participating policies involved in the *Connecticut General Life Ins. Co. Case, supra,* 218 Fed. Rep. 188, 192, was: "Reduction of premiums as determined by the company will be made annually beginning at the second year, or the insured may pay the full premium and instruct the company to apply the amount of reduction apportioned to him in any one of the following plans:" (Then follow four plans.)

entered at the full rate and the abatement (that is, the amount by which it was reduced) is entered as a credit. The financial result both to the company and to the policyholders is, however, exactly the same whether the renewal premium is reduced by a dividend or whether the renewal premium remains unchanged but is paid in part either by a credit or by cash received as a dividend. And the entries in bookkeeping would be substantially the same. Because the several ways of paying a dividend are, as between the company and the policyholder, financial equivalents, Congress, doubtless, concluded to make the incidents the same, also, as respects income taxation. Where the dividend was used to abate or reduce the full or gross premium—the direction to eliminate from the apparent premium receipts is aptly expressed by the phrase "shall not include," used in clause (c) above. Where the premium was left unchanged, but was paid in part by a credit or cash derived from the dividend the instruction would be more properly expressed by a direction to deduct those credits. Congress doubtless used the words "shall not include" as applied also to these credits because it eliminated them from the aggregate of taxable premiums as being the equivalent of abatement of premiums.

That such was the intention of Congress is confirmed by the history of the non-inclusion clause, (c) above. The provision in the Revenue Act of 1913, for taxing the income of insurance companies is in large part identical with the provision for the special excise tax upon them imposed by the Act of August 5, 1909, c. 6, § 38, 36 Stat. 112. By the latter act the net income of insurance companies was, also, to be ascertained by deducting from gross income "sums other than dividends, paid within the year on policy and annuity contracts"; but there was in that act no non-inclusion clause whatsoever. The question arose whether the provision in the Act of 1909, identical with (c)

above, prevented using in the computation the reduced renewal premiums instead of the full premiums, where the reduction in the premium had been effected by means of dividends. In *Mutual Benefit Life Insurance Co.* v. *Herold*, 198 Fed. Rep. 199, decided July 29, 1912, it was held that the renewal premium as reduced by such dividends should be used in computing the gross premium; and it was said (p. 212) that dividends so applied in reduction of renewal premiums "should not be confused with dividends declared in the case of a full-paid participating policy, wherein the policyholder has no further premium payments to make. Such payments having been duly met, the policy has become at once a contract of insurance and of investment. The holder participates in the profits and income of the invested funds of the company." On writ of error sued out by the Government the judgment entered in the District Court was affirmed by the Circuit Court of Appeals on January 27, 1913, 201 Fed. Rep. 918; but that court stated that it refrained from expressing any opinion concerning dividends on full-paid policies, saying that it did so "not because we wish to suggest disapproval, but merely because no opinion about these matters is called for now, as they do not seem to be directly involved." The non-inclusion clause in the Revenue Act of 1913, (c) above, was doubtless framed to define what amounts involved in dividends should be "non-included," or deducted, and thus to prevent any controversy arising over the questions which had been raised under the Act of 1909.[1] The petition for writ of certiorari applied for by the Government was not denied by this court until December 15, 1913, (231 U. S. 755), that is, after the passage of the act.

---

[1] Substantially the same questions were involved, also, in *Connecticut General Life Ins. Co.* v. *Eaton*, 218 Fed. Rep. 188, and *Connecticut Mutual Life Ins. Co.* v. *Eaton*, 218 Fed. Rep. 206, in which decisions were not, however, reached until the following year.

*Second:* It is argued that the nature of life insurance dividends, is the same, whatever the disposition made of them; and that Congress could not have intended to relieve the companies from taxation to the extent that dividends are applied in payment of premiums and to tax them to the extent that dividends are not so applied. If Congress is to be assumed to have intended, in obedience to the demands of consistency, that all dividends declared under life insurance policies should be treated alike in connection with income taxation regardless of their disposition, the rule of consistency would require deductions more far-reaching than those now claimed by the company. Why allow so-called non-inclusion of amounts equal to the dividends paid in cash but not applied in reduction of renewal premium and disallow so-called non-inclusion of amounts equal to the dividends paid by a credit representing amounts retained by the company for accumulation or to be otherwise used for the policyholders' benefit? The fact is, that Congress has acted with entire consistency in laying down the rule by which in computing gross earnings certain amounts only are excluded; but the company has failed to recognize what the principle is which Congress has consistently applied. The principle applied is that of basing the taxation on receipts of net premiums, instead of on gross premiums. The amount equal to the aggregate of certain dividends is excluded, although they are dividends, because by reason of their application the net premium receipts of the tax are to that extent less. There is a striking difference between an aggregate of individual premiums, each reduced by means of dividends, and an aggregate of full premiums, from which it is sought to deduct amounts paid out by the company which have no relation whatever to premiums received within the tax year but which relate to some other premiums which may have been received many years earlier. The difference between the two

cases is such as may well have seemed to Congress sufficient to justify the application of different rules of taxation.

There is also a further significant difference. All life. insurance has in it the element of protection. That afforded by fraternal beneficiary societies, as originally devised, had in it only the element of protection. There the premiums paid by the member were supposed to be sufficient, and only sufficient, to pay the losses which will fall during the current year; just as premiums in fire, marine, or casualty insurance are supposed to cover only the losses of the year or other term for which the insurance is written. Fraternal life insurance has been exempted from all income taxation; Congress having differentiated these societies, in this respect as it had in others, from ordinary life insurance companies. Compare *Supreme Council of the Royal Arcanum* v. *Behrend*, 247 U. S. 394. But in level-premium life insurance, while the motive for taking it may be mainly protection, the business is largely that of savings investment. The premium is in the nature of a savings deposit. Except where there are stockholders, the savings bank pays back to the depositor his deposit with the interest earned less the necessary expense of management. The insurance company does the same, the difference being merely that the savings bank undertakes to repay to each individual depositor the whole of his deposit with interest; while the life insurance company undertakes to pay to each member of a class the average amount (regarding the chances of life and death); so that those who do not reach the average age get more than they have deposited, that is, paid in premiums (including interest) and those who exceed the average age less than they deposited (including interest). The dividend of a life insurance company may be regarded as paying back part of these deposits called premiums. The dividend is made possible because the amounts paid in as premium have earned

more than it was assumed they would when the policy con-
tract was made, or because the expense of conducting the
business was less than it was then assumed it would be or be-
cause the mortality, that is the deaths in the class to which
the policyholder belongs, proved to be less than had then
been assumed in fixing the premium rate. When for any
or all of these reasons the net cost of the investment (that
is, the right to receive at death or at the endowment date
the agreed sum) has proved to be less than that for which
provision was made, the difference may be regarded either
as profit on the investment or as a saving in the expense of
the protection. When the dividend is applied in reduction
of the renewal premium, Congress might well regard the
element of protection as predominant and treat the reduc-
tion of the premium paid by means of a dividend as merely
a lessening of the expense of protection. But after the
policy is paid up, the element of investment predominates
and Congress might reasonably regard the dividend sub-
stantially as profit on the investment.

The dividends, aggregating $686,503, which the Penn
Mutual Company insists should have been "non-in-
cluded," or more properly deducted, from the gross in-
come, were, in part, dividends on the ordinary limited
payment life policies which had been paid-up. There are
others which arose under policy contracts in which the
investment feature is more striking; for instance, the
Accelerative Endowment Policy or such special form of
contract as the 25-year "6% Investment Bond" matured
and paid March, 1913, on which the policyholder received
besides dividends, interest and a "share of forfeitures."
In the latter, as in "Deferred Dividend" and other
semi-tontine policies, the dividend represents in part what
clearly could not be regarded as a repayment of excess
premium of the policyholder receiving the dividend. For
the "share of the forfeiture" which he receives is the share
of the redundancy in premium of other policyholders who

did not persist in premium payments to the end of the contract period.

*Third:* The non-inclusion clause here in question, (c) above, is found in § II G. (b) in juxtaposition to the provisions, concerning mutual fire and mutual marine companies, clauses (a) and (b) above. The fact that in three separate clauses three different rules are prescribed by Congress for the treatment of redundant premiums in the three classes of insurance, would seem to be conclusive evidence that Congress acted with deliberation and intended to differentiate between them in respect to income taxation. But the company, ignoring the differences in the provisions concerning fire and marine companies respectively, insists that mutual life insurance rests upon the same principles as mutual fire and marine and that as the clauses concerning fire and marine companies provide specifically for non-inclusion in or deduction from gross income of all portions of premiums returned, Congress must have intended to apply the same rule to all. Neither premise nor conclusion is sound.

Mutual fire, mutual marine and mutual life insurance companies are analogous in that each performs the service called insuring wholly for the benefit of their policyholders and not like stock insurance companies in part for the benefit of persons who as stockholders have provided working capital on which they expect to receive dividends representing profits from their investment. In other words, these mutual companies are alike in that they are coöperative enterprises. But in respect to the service performed fire and marine companies differ fundamentally, as above pointed out, from legal reserve life companies. The thing for which a fire or marine insurance premium is paid is protection, which ceases at the end of the term. If after the end of the term a part of the premium is returned to the policyholder, it is not returned as something purchased with the premium, but as a part of the premium

which was not required to pay for the protection; that is, the expense was less than estimated. On the other hand, the service performed in level-premium life insurance is both protection and investment. Premiums paid—not in the tax year, but perhaps a generation earlier—have earned so much for the coöperators, that the company is able to pay to each not only the agreed amount but also additional sums called dividends; and have earned these additional sums, in part at least, by transactions not among the members, but with others; as by lending the money of the coöperators to third persons who pay a larger rate of interest than it was assumed would be received on investments. The fact that the investment resulting in accumulation or dividend is made by a coöperative as distinguished from a capitalistic concern does not prevent the amount thereof being properly deemed a profit on the investment. Nor does the fact that the profit was earned by a coöperative concern afford basis for the argument that Congress did not intend to tax the profit. Congress exempted certain coöperative enterprises from all income taxation, among others, mutual savings banks; but, with the exception of fraternal beneficiary societies, it imposed in express terms such taxation upon "every insurance company." [1]

The purpose of Congress to differentiate between mutual fire and marine insurance companies on the one hand and life insurance companies on the other is further manifested by this: The provision concerning return premiums in computation of the gross income of fire and marine insurance companies is limited in terms to mutual companies, whereas the non-inclusion clause, (c) above, relating to life

---

[1] The alleged unwisdom and injustice of taxing mutual life insurance companies while mutual savings banks were exempted had been strongly pressed upon Congress. Briefs and statements filed with Senate Committee on Finance on H. R. 3321—Sixty-third Congress, first session, Vol. 3, pp. 1955–2094.

insurance companies, applies whether the company be a stock or a mutual one.   There is good reason to believe that the failure to differentiate between stock and mutual life insurance companies was not inadvertent.   For while there is a radical difference between stock fire and marine companies and mutual fire and marine companies, both in respect to the conduct of the business and in the results to policyholders, the participating policy commonly issued by the stock life insurance company is, both in rights conferred and in financial results, substantially the same as the policy issued by a purely mutual life insurance company. The real difference between the two classes of life companies as now conducted lies in the legal right of electing directors and officers.   In the stock company stockholders have that right; in the mutual companies, the policyholders who are the members of the corporation.

The Penn Mutual Company, seeking to draw support for its argument from legislation subsequent to the Revenue Act of 1913, points also to the fact that by the Act of September 8, 1916, c. 463, 39 Stat. 756, 768, § 12, subsection second, subdivision c, the rule for computing gross income there provided for mutual fire insurance companies was made applicable to mutual employers' liability, mutual workmen's compensation and mutual casualty insurance companies.   It asserts that thereby Congress has manifested a settled policy to treat the taxable income of mutual concerns as not including premium refunds; and that if mutual life insurance companies are not permitted to "exclude" them, these companies will be the only mutual concerns which are thus discriminated against. Casualty insurance, in its various forms, like fire and marine insurance, provides only protection, and the premium is wholly an expense.   If such later legislation could be considered in construing the Act of 1913, the conclusion to be drawn from it would be clearly the opposite of that urged.   The later act would tend to show that Congress

persists in its determination to differentiate between life and other forms of insurance.

*Fourth:* It is urged that in order to sustain the interpretation given to the *non-inclusion* clause by the Circuit Court of Appeals (which was, in effect, the interpretation set forth above) it is necessary to interpolate in the clause the words "within such year," as shown in italics in brackets, thus:

"And life insurance companies shall not include as income in any year such portion of any actual premium received from any individual policyholder [*within such year*] as shall have been paid back or credited to such individual policyholder, or treated as an abatement of premium of such individual policyholder, within such year."

What has been said above shows that no such interpolation is necessary to sustain the construction given by the Circuit Court of Appeals. That court did not hold that the permitted non-inclusion from the year's gross income is limited to that portion of the premium received within the year which, by reason of a dividend, is paid back within the same year. What the court held was that the non-inclusion is limited to that portion of the premium which, although entered on the books as received, was not actually received, within the year, because the full premium was, by means of the dividend, either reduced, or otherwise wiped out to that extent. Nor does the Government contend that any portion of a premium, not received within the tax year, shall be included in computing the year's gross income. On the other hand what the company is seeking is not to have "non-included" a part of the premiums which were actually received within the year, or which appear, as matter of bookkeeping to have been received but actually were not. It is seeking to have the aggregate of premiums actually received within the year *reduced* by an amount which the company paid out within

the year; and which it paid out mainly on account of premiums received long before the tax year. What it seeks is not a *non-inclusion* of amounts paid in—but a *deduction* of amounts paid out.

If the terms of the non-inclusion clause, (c) above, standing alone, permitted of a doubt as to its proper construction, the doubt would disappear when it is read in connection with the deduction clause, (d) above. The deduction there prescribed is of "the sums other than dividends paid within the year on policy and annuity contracts." This is tantamount to a direction that dividends shall not be deducted. It was argued that the dividends there referred to are "commercial" dividends like those upon capital stock; and that those here involved are dividends of a different character. But the dividends which the deduction clause says, in effect, shall not be deducted, are the very dividends here in question, that is dividends "on policy and annuity contracts." None such may be deducted by any insurance company except as expressly provided for in the act, in clauses quoted above, (a) (b) and (c). That is, clauses (a) (b) and (c) are, in effect, exceptions to the general exclusion of dividends from the permissible deductions as prescribed in clause (d) above.

In support of the company's contention that the interpolation of the words "within the year" is necessary in order to support the construction given to the act by the Circuit Court of Appeals we are asked to consider the legislative history of the Revenue Act of 1918 (enacted February 24, 1919, c. 18, 40 Stat. 1057); and specifically to the fact that in the bill as introduced in and passed by the House, the corresponding section (233 (a)) contained the words "within the taxable year" and that these words were stricken out by the Conference Committee (Report No. 1037, 65th Cong., 3d sess.) The legislative history of an act may, where the meaning of the words used is doubt-

ful, be resorted to as an aid to construction. *Caminetti* v. *United States*, 242 U. S. 470, 490. But no aid could possibly be derived from the legislative history of another act passed nearly six years after the one in question. Further answer to the argument based on the legislative history of the later act would, therefore, be inappropriate.

We find no error in the judgment of the Circuit Court of Appeals. It is

*Affirmed.*