MONARCH LIFE INSURANCE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 88811.   Promulgated October 11, 1938.

*Frederick A. Ballard, Esq.,* and *Abbott P. Mills, Esq.,* for the petitioner.

*L. W. Creason, Esq.,* for the respondent.

**OPINION.**

OPPER: Not a little of the difficulty inhering in the disposition of this proceeding is due to the anomalous factual circumstances giving rise to petitioner's claim. It is stipulated that "less than 50% of petitioner's total reserve funds held during the taxable year were held for the fulfillment of life insurance contracts." Petitioner is,

therefore, not a "life insurance company" as that term is used in the Revenue Act of 1928 [2] and, being a privately owned stock company, must be treated as an insurance company "other than life or mutual." Nevertheless all of the items of dividends for which petitioner claims credit either as an exclusion from gross income or as a deduction arise out of its life insurance contracts. It should be noted at the outset and borne in mind throughout the consideration of the question raised in this proceeding that, since Congress has seen fit to place petitioner in the category of insurance companies other than life, its position must be treated without regard to the nature of the insurance contracts involved and specifically without giving effect to any special attributes that may inhere in life insurance contracts.

Petitioner bases its contention that it is entitled to deduct dividends credited or paid on its participating life policies on the alternative grounds that such payments or credits constitute "return premiums" within the meaning of section 204 (b) (5), or "ordinary and necessary expenses" within section 204 (c) (1), Revenue Act of 1932. [3] If

---

[2] SEC. 201. TAX ON LIFE INSURANCE COMPANIES.

(a) *Definition.*—When used in this title the term "life insurance company" means an insurance company engaged in the business of issuing life insurance and annuity contracts (including contracts of combined life, health, and accident insurance), the reserve funds of which held for the fulfillment of such contracts comprise more than 50 per centum of its total reserve funds.

[3] SEC. 204. INSURANCE COMPANIES OTHER THAN LIFE OR MUTUAL.

(a) IMPOSITION OF TAX.—In lieu of the tax imposed by section 13 of this title, there shall be levied, collected, and paid for each taxable year upon the net income of every insurance company (other than a life or mutual insurance company) a tax as follows :

(1) In the case of such a domestic insurance company, 13¾ per centum of its net income ;

(2) In the case of such a foreign insurance company, 13¾ per centum of its net income from sources within the United States.

(b) DEFINITION OF INCOME, ETC.—In the case of an insurance company subject to the tax imposed by this section—

(1) GROSS INCOME.—"Gross income" means the sum of (A) the combined gross amount earned during the taxable year, from investment income and from underwriting income as provided in this subsection, computed on the basis of the underwriting and investment exhibit of the annual statement approved by the National Convention of Insurance Commissioners, and (B) gain during the taxable year from the sale or other disposition of property ; and (C) all other items constituting gross income under section 22 ;

(2) NET INCOME.—"Net income" means the gross income as defined in paragraph (1) of this subsection less the deductions allowed by subsection (c) of this section ;

(3) INVESTMENT INCOME.—"Investment income" means the gross amount of income earned during the taxable year from interest, dividends, and rents, computed as follows :

To all interest, dividends and rents received during the taxable year, add interest, dividends and rents due and accrued at the end of the taxable year, and deduct all interest, dividends and rents due and accrued at the end of the preceding taxable year.

(4) UNDERWRITING INCOME.—"Underwriting income" means the premiums earned on insurance contracts during the taxable year less losses incurred and expenses incurred ;

(5) PREMIUMS EARNED.—"Premiums earned on insurance contracts during the taxable year" means an amount computed as follows :

From the amount of gross premiums written on insurance contracts during the taxable year, deduct return premiums and premiums paid for reinsurance. To the result so obtained add unearned premiums on outstanding business at the end of the preceding

the petitioner is entitled to exclude these dividends from gross income as "return premiums", then, obviously it is not necessary to discuss whether they could constitute ordinary and necessary expenses. On the other hand, since they are items having a unique existence in the insurance business, allowance thereof would be expected among the technical provisions covering the peculiar types of income and deductions of an insurance company, section 204 (b), especially subdivisions (3)—(7), rather than in the provisions referring to the deductions allowed to corporations generally, section 204 (c); and, in fact, in referring to mutual companies, that is the method adopted by Congress.[4] Therefore if Congress in the provisions dealing specifically with insurance companies did not intend to permit the exclusion of policy dividends in computing net income it can not, in the absence of specific language, be assumed that it was intended to allow them under the general provision for deduction of such ordinary and necessary expenses as are common to all corporations. "It is an old and familiar rule that, 'where there is, in the same statute, a particular

taxable year and deduct unearned premiums on outstanding business at the end of the taxable year;

(6) LOSSES INCURRED.—"Losses incurred" means losses incurred during the taxable year on insurance contracts, computed as follows:

To losses paid during the taxable year, add salvage and reinsurance recoverable outstanding at the end of the preceding taxable year, and deduct salvage and reinsurance recoverable outstanding at the end of the taxable year. To the result so obtained add all unpaid losses outstanding at the end of the taxable year and deduct unpaid losses outstanding at the end of the preceding taxable year;

(7) EXPENSES INCURRED.—"Expenses incurred" means all expenses shown on the annual statement approved by the National Convention of Insurance Commissioners, and shall be computed as follows:

To all expenses paid during the taxable year add expenses unpaid at the end of the taxable year and deduct expenses unpaid at the end of the preceding taxable year. For the purpose of computing the net income subject to the tax imposed by this section there shall be deducted from expenses incurred as defined in this paragraph all expenses incurred which are not allowed as deductions by subsection (c) of this section.

(c) DEDUCTIONS ALLOWED.—In computing the net income of an insurance company subject to the tax imposed by this section there shall be allowed as deductions:

(1) All ordinary and necessary expenses incurred, as provided in section 23 (a);

(2) All interest as provided in section 23 (b);

(3) Taxes as provided in section 23 (c);

(4) Losses incurred as defined in subsection (b) (6) of this section;

(5) Losses sustained during the taxable year from the sale or other disposition of property;

(6) Bad debts in the nature of agency balances and bills receivable ascertained to be worthless and charged off within the taxable year;

(7) The amount received as dividends from corporations as provided in section 23 (p);

(8) The amount of interest earned during the taxable year which under section 22 (b) (4) is exempt from the taxes imposed by this title, and the amount of interest allowed as a credit under section 26;

(9) A reasonable allowance for the exhaustion, wear and tear of property, as provided in section 23 (k);

(d) DEDUCTIONS OF FOREIGN CORPORATIONS.—In the case of a foreign corporation the deductions allowed in this section shall be allowed to the extent provided in Supplement I.

(e) DOUBLE DEDUCTIONS.—Nothing in this section shall be construed to permit the same item to be twice deducted.

[4] See footnote 5, infra.

enactment, and also a general one, which, in its most comprehensive sense, would include what is embraced in the former, the particular enactment must be operative, and the general enactment must be taken to affect only such cases within its general language as are not within the provisions of the particular enactment.'" *United States* v. *Chase*, 135 U. S. 255, 260; also *Ginsberg & Sons* v. *Popkin*, 285 U. S. 204. In our view, then, the petitioner's case must stand or fall on whether the term "return premiums" was intended to embrace "dividends" to policyholders. For this reason, and because of the different character of the petitioner's commitments from those in *Retailers Fire Insurance Co.*, 3 B. T. A. 1186, we do not regard that case as of any controlling effect. Moreover, the respondent did not question there that the refunds were deductible expenses, and perhaps for that reason there was no consideration of the bearing which *Penn Mutual Co.* v. *Lederer*, 252 U. S. 523, might have had upon the issue if raised.

Respondent contends that the term "return premiums" means unearned premiums, arising from cancellations, terminations, or rescissions, which are returned because the risk did not attach to the extent originally contemplated. In such cases there is a "return" of premiums as such. Provisions for return or refund of premiums are common in fire insurance policies. However, in life policies, including those here in question, there are comparable provisions, e. g., in the case of military or naval service in violation of the terms of the policy. But it is not vital to the sense of the statute that the term "return premiums" has any application at all to life policies since as pointed out above the section in question in terms applies to all stock insurance companies other than life, as defined in the statute.

The petitioner claims that the term "return premiums" is applicable to its policy dividends, no matter how they are paid or applied, although it admits that they are not returned as an earmarked "excess premium" but rather out of the general surplus of the company in which the policyholders are permitted to participate. There has not been cited nor have we been able to find any authoritative or accepted definition of the term as used generally or in the insurance business. Apparently, the most that can be said is that its meaning depends upon the context in which it is used. It is evidently sometimes used with the meaning attributed to it by the respondent, as in *Retailers Fire Insurance Co.*, *supra*, where corporate bylaws provided separately for payment of "return premiums" and policy dividends. And the term is sometimes used where it might be susceptible of the interpretation given it by petitioner, as in the Massachusetts General Laws (ch. 175, sec. 1), which refer to "return

premiums, other than premiums returned to policyholders as dividends."

It seems to us that the context of the provisions of the Revenue Act of 1932 covering insurance companies indicates an intention to use the term "return premiums" restrictively. In the first place, where Congress intended to allow the deduction of any repayments to policyholders (in addition to policy losses) as for example in the case of mutual insurance companies other than life, it used much fuller language which made its meaning clear.[5] Its failure to use any such language here is significant. *Penn Mutual Co.* v. *Lederer*, *supra*. In the second place, the term "return premiums" appears in the section defining and designed to arrive at "premiums earned." The item is permitted as a deduction from gross premiums received. It may therefore be assumed to be limited to premiums considered "unearned." This is borne out by the allowance as a deduction of premiums paid for reinsurance, in which case the risk is merely transferred and the original insurer earns nothing. But we are dealing here with dividends paid out of an obviously earned surplus,[6] resulting in part from investment profits and in part from prior premium payments, both of which are treated as earnings at the time of receipt.[7]

---

[5] SEC. 208. MUTUAL INSURANCE COMPANIES OTHER THAN LIFE.

(a) APPLICATION OF TITLE.—Mutual insurance companies, other than life insurance companies, shall be taxable in the same manner as other corporations, except as hereinafter provided in this section.

(b) GROSS INCOME.—Mutual marine-insurance companies shall include in gross income the gross premiums collected and received by them less amounts paid for reinsurance.

(c) DEDUCTIONS.—In addition to the deductions allowed to corporations by section 23 the following deductions to insurance companies shall also be allowed, unless otherwise allowed—

(1) MUTUAL INSURANCE COMPANIES OTHER THAN LIFE INSURANCE.—In the case of mutual insurance companies other than life insurance companies—

(A) the net addition required by law to be made within the taxable year to reserve funds (including in the case of assessment insurance companies the actual deposit of sums with State or Territorial officers pursuant to law as additions to guarantee or reserve funds) ; and

(B) the sums other than dividends paid within the taxable year on policy and annuity contracts.

(2) MUTUAL MARINE INSURANCE COMPANIES.—In the case of mutual marine insurance companies, in addition to the deductions allowed in paragraph (1) of this subsection, unless otherwise allowed, amounts repaid to policyholders on account of premiums previously paid by them, and interest paid upon such amounts between the ascertainment and the payment thereof;

(3) MUTUAL INSURANCE COMPANIES OTHER THAN LIFE AND MARINE.—In the case of mutual insurance companies (including interinsurers and reciprocal underwriters, but not including mutual life or mutual marine insurance companies) requiring their members to make premium deposits to provide for losses and expenses, the amount of premium deposits returned to their policyholders, and the amount of premium deposits retained for the payment of losses, expenses, and reinsurance reserves.

[6] Petitioner's policies provide : "SURPLUS.—After premiums for two full years have been paid hereon, upon each succeeding anniversary of the date hereof, this policy shall be entitled to participate in any distribution of surplus made by the company * * *."

[7] Income Statements for 1931 and 1932 list investment profits from interest, dividends and rents ; they also list total gross premiums less amounts paid for re-insurance, but with no deduction for "return premiums."

Had Congress intended to exclude from "earned premiums" the amount of dividends on participating policies it could have used language similar to that of the Massachusetts statute cited *supra*, which provides that a participating company "shall not be required to include * * * in its earned premiums" a loading charged "solely for dividends." Finally, there is the rule that the provision in question, even though it appears in a section for computing gross income, is an exemption from tax which is to be construed strictly against the taxpayer. *Heiner* v. *Colonial Trust Co.*, 275 U. S. 232.

Two factors in the legislative history of the measure bear out this construction of "return premiums." In addition to the provisions regarding mutual companies quoted *supra*, footnote 5, the early acts in the case of life insurance companies (which were not restricted by definition as in the later acts) contained specific provision for the noninclusion in income of "such portion of any actual premium received from any individual policyholder as is paid back or credited to, or treated as an abatement of premium of such individual policyholder, within the year." [8] This provision made it clear that dividends applied in abatement of premiums were to be excluded in computing net income. *Penn Mutual Co.* v. *Lederer, supra* (1920). But this language was stricken from the 1921 Revenue Bill by the Senate. [9] And significantly no such language was embodied in section 246 (counterpart of section 204, Revenue Act of 1932) when that section was added by the Senate. [10]

In the second place, the Senate proposed to limit the new provisions inserted by the House in the 1921 Bill to life companies, [11] as defined, and it was originally proposed in the Senate to treat both mutual and stock companies, "other than life", in the same section (246). [12] As so written, the subdivision of section 246 dealing with the computation of "earned premiums" allowed the deduction of return premiums in the following language:

* * * deduct return premiums (or, in the case of mutual companies, dividends or unabsorbed premiums returned or credited to the assured) and premiums paid for reinsurance. [13]

It seems to us inescapable that as there used and applied only to nonmutual companies, "return premiums" did not include dividends or other payments the effect of which would be to reduce premiums

[8] Tariff Act of 1913. II. G (b); Revenue Act of 1916, sec. (12) (a) (2d); *Semble*, Revenue Act of 1918, sec. 233 (a) (1).

[9] H. R. 8245, Calendar No. 286, 67th Cong., 1st sess., Senate Report No. 272, pp. 40, 156, and Senate Report No. 275, p. 83, line 5. Also, H. R. 8245, "As Agreed to in Conference", p. 89, line 20.

[10] H. R. 8245, "As Agreed to in Conference", p. 118, line 17; see also, Conference Report, II. R. 8245, House Report No. 486, 67th Cong., 1st sess., pp. 40–41.

[11] H. R. 8245, Senate Report No. 272 (footnote 9, *supra*) p. 171; Senate Report 275, p. 102; "As Agreed to in Conference", p. 113.

[12] Congressional Record, vol. 61, part 7, p. 6981, 67th Cong., 1st sess.

[13] Footnote 12, *supra*.

already paid—otherwise the parenthetical clause would have been pure surplusage. Since effect must, if possible, be given to "every clause and part" of a statute (*Ginsberg & Sons* v. *Popkin, supra*), if the quoted language were before us there could be no question that "return premiums" was intended to exclude dividends. While still in the Senate the section was altered so that the application was restricted to nonmutual companies, its language relating to "return premiums" assumed its present form, and the sections covering mutual companies in the existing law were left substantially unchanged. The few changes from the section as originally proposed (including the striking of the parenthetical clause quoted above) were characterized by Senator Smoot of the Finance Committee in charge of presenting the section on the floor,[14] as intended only to make the section inapplicable to mutual companies.[15] Thus no change of intent in the use of the term "return premiums" is apparent. The section as thus amended was adopted by the Senate and thereafter by the Conference Committee and by the House. The statement by Senator Smoot is entitled to respect as being in the nature of a supplemental committee report (see *United States* v. *St. Paul, M. & M. Ry. Co.*, 247 U. S. 310, 318), since section 246 was proposed by the Committee after its original report had been made.[16] And the intent of the Senate must be attributed to the House, which acted later with presumable knowledge of the Senate proceedings. This assumption is implicit in decisions giving effect to the intent manifested by the initiating House. See *G. M. Standifer Construction Corporation*, 4 B. T. A. 525, 557.

Petitioner contends that it is inconceivable that Congress could have preferred mutual companies over stock companies. This assumption we think unwarranted. Not only has the desire of Congress to favor mutual enterprises been recognized (see *Penn Mutual Co.* v. *Lederer, supra*) but express statements during consideration of this measure indicate that to be precisely what was intended.[17] What

---

[14] Congressional Record, vol. 61, part 7, p. 7159, 67th Cong., 1st sess.

[15] Congressional Record, vol. 61, part 7, p. 7159, 67th Cong., 1st sess. : *"Mr. Smoot:* * * * These amendments are simply to perfect the original amendment so as to exclude mutual companies from the tax imposed under this amendment and allow the mutual companies to pay under existing law. * * *."* See also footnote 17, *infra.*

[16] Footnote 12, *supra;* see also Senate Report No. 275, 67th Cong., 1st sess., p. 20 ; H. R. 8245, Senate Report No. 272, p. 175, and Senate Report No. 275, p. 107 ; and see footnote 14, *supra.*

[17] Congressional Record, vol. 61, part 7, p. 7159, 67th Cong., 1st sess. :

"Mr. Smoot. I will tell the Senator what the changes are. The only changes are that we have amended the amendment by making a separate provision for mutual companies. In the past the mutual companies have paid scarcely any tax whatever. In some cases it is so small that it would hardly be denominated a tax. If they are included in this amendment, the tax in some cases would represent an increase of over 400 per cent. The purpose of it is to allow the mutual companies to pay taxes under existing law.

"Mr. Simmons. You exempt them from this new scheme?

"Mr. Smoot. We exempt them from this new scheme.

"Mr. Simmons. So as not to overtax them. I agree with the Senator about it.

"Mr. Smoot. That is all there is to it."

thus seems inconceivable is that Congress intended to prefer stock companies over mutual companies. Yet that is the position which petitioner's contention will reach. It claims, either as an exclusion from income or as a deduction for expense, all of the policy dividends paid or credited without regard to the actual disposition of such dividends. This is a preferential treatment to which not even a mutual company would be entitled. The Supreme Court in *Penn Mutual Co.* v. *Lederer*, *supra*, summarized provisions of the 1913 Act as follows:

* * * Congress treated the so-called repayments or dividends in this way (p. 173):

(a) Mutual fire companies "shall not return as income any portion of the premium deposits returned to their policyholders."

(b) Mutual marine companies "shall be entitled to include in deductions from gross income amounts repaid to policyholders on account of premiums previously paid by them and interest paid upon such amounts between the ascertainment thereof and the payment thereof."

(c) Life insurance companies (that is both stock and strictly mutual) "shall not include as income in any year such portion of any actual premium received from any individual policyholder as shall have been paid back or credited to such individual policyholder, or treated as an abatement of premium of such individual policyholder, within such year."

(d) For all insurance companies, whatever their field of operation, and whether stock or mutual, the act provides that there be deducted from gross income "the net addition, if any, required by law to be made within the year to reserve funds and the sums other than dividends paid within the year on policy and annuity contracts."

Of these provisions, which are in *pari materia* [18] with the provisions of the 1932 Act governing mutual companies, the Court said:

If the terms of the non-inclusion clause, (c) above, standing alone, permitted of a doubt as to its proper construction, the doubt would disappear when it is read in connection with the deduction clause, (d) above. The deduction there prescribed is of "the sums other than dividends paid within the year on policy and annuity contracts." This is tantamount to a direction that dividends shall not be deducted. It was argued that the dividends there referred to are "commercial" dividends like those upon capital stock; and that those here involved are dividends of a different character. But the dividends which the deduction clause says, in effect, shall not be deducted, are the very dividends here in question, that is dividends "on policy and annuity contracts." None such may be deducted by any insurance company except as expressly provided for in the act, in clauses quoted above, (a) (b) and (c). That is, clauses (a) (b) and (c) are, in effect, exceptions to the general exclusion of dividends from the permissible deductions as prescribed in clause (d) above.

As so interpreted by the Supreme Court, the revenue acts were not intended to provide that dividends as such should be deductible in

---

[18] The comparable parts of the 1932 Act are section 208 (c) (1)–(3), footnote 5, *supra*. The provision designated (c) in the quoted excerpt was omitted in the 1921 Act. See footnote 9, *supra*.

the case of mutual companies—except in the cases specifically mentioned. We can not believe that Congress intended that they could nevertheless be deducted by stock companies. It is doubtful whether the only exception permitted to mutual companies generally would be broad enough to grant a deduction even to a mutual company operating as did the petitioner.[19] But, in any event Congress has failed to include the exceptions granted in favor of mutual companies in the provisions relating to companies other than life and mutual, and we think that failure must be regarded as intentional. We accordingly conclude that petitioner is not entitled to allowance for any of the dividends in question.

Reviewed by the Board.

*Decision will be entered for the respondent.*

ARUNDELL, VAN FOSSAN, LEECH, MELLOTT, and ARNOLD dissent.

---

[19] The exception is for the amount of "premium deposits" returned to policy holders or retained for specified purposes. It seems that a premium deposit is a deposit against the payment of a premium the amount of which is to be determined at a later time, and not the payment of a fixed premium with a possible subsequent right to share in profits by means of a dividend. See Solicitor's Opinion 156, III-1, C. B. 284.