THOMPSON, Collector of Internal Revenue, v. WHITE RIVER BURIAL ASS'N et al.

No. 13956.

United States Court of Appeals.
Eighth Circuit.

Jan. 12, 1950.

Harry Marselli, Special Assistant to the Attorney General (Theron Lamar Caudle, Assistant Attorney General; Ellis N. Slack, Robert N. Anderson, and Rhodes S. Baker, Jr., Special Assistants to the Attorney General; James T. Gooch, United States Attorney: and G. D. Walker, Assistant United States Attorney, Little Rock, Ark., on the brief), for appellant.

Leon B. Catlett, Little Rock, Ark. (Catlett & Henderson, Little Rock, Ark., on the brief), for appellees.

Before WOODROUGH, THOMAS, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

This is an appeal from a judgment in favor of the taxpayer in a suit against a collector of internal revenue to recover income and capital stock taxes, penalty, and interest, assessed and collected from the taxpayer in 1947 for the years 1934 to 1945, inclusive.

The facts are not disputed. The taxpayer is an unincorporated burial association, organized and operating under a statute of Arkansas, 6 Ark.Stat.Ann.1947, § 67-1232; Pope's Ark.Stat.1937, § 898, for the purpose of furnishing burial services and supplies for its deceased members in accordance with the terms of its membership certificates. The taxpayer's sole source of income is from dues and assessments levied quarterly on its membership. All the receipts of the taxpayer from this source are placed in one account from which death claims and expenses of taxpayer's operations are paid. No distinction is made in taxpayer's accounting system between funds for the payment of operating expenses and funds reserved for the payment of death claims.

Under the Arkansas law the taxpayer is subject to rules and regulations promulgated by the State Bank Commissioner. Among these regulations are the following:

*"Ownership of Funds.* Since burial associations are non-profit mutual benefit societies, all assessments, dues and/or other funds of whatever kind or character, collected or received by them, over and above necessary expenses (which in no event may exceed 20% of its receipts for any given period) shall be and remain the property of the association for use and benefit of its members only.

*"Surplus Funds.* Should any association have on hand at the end of any fiscal year any funds over and above its legal obligation, said funds may be retained by the association for the purpose only of meeting its future losses. If for any reason an association should be liquidated or dis-

continue operations, all funds on hand after its just claims have been paid, shall be distributed to the members of the association then in good standing ratably as their interests may appear.

"*Mortuary Fund.* At least 80% of the receipts of each association must be allocated to the mortuary fund and, when so allocated, can be used for no purpose other than to meet its losses.

"*Expenses.* Necessary printing, stationery, postage, office supplies and expenses, clerical hire, statutory fees and examination fees may be paid by the association. No organization or promotional expense and no expense other than the items set out above may be charged, and in no event may expenses exceed 20% of the gross receipts of the association for any given period."

The taxpayer's bylaws provide for an annual meeting of the members of the association upon 15 days' notice to the members, at which each member is entitled to vote in person or by proxy. Any action taken by a majority of the members voting at an annual meeting is binding upon the association. The officers are elected by the members of the association at the annual meeting for a term of one year. The officers constitute the board of directors and have full power and authority to manage and direct the affairs of the association, subject to the control of the members at an annual meeting.

In 1934 taxpayer's expenses of operation exceeded 20 per cent of its gross collections, and in 1938 the benefits paid exceeded 80 per cent of its gross collections. For all other years during the period from 1934 to 1945, inclusive, taxpayer's expenses amounted to less than 20 per cent of its gross receipts, and the benefits paid amounted to less than 80 per cent of gross receipts. At the end of 1945 the taxpayer's books showed it had spent on expenses during the period involved in this action an amount aggregating $40,-816.16 less than 20 per cent of its gross receipts.

The excess of taxpayer's receipts from membership assessments over its actual allowable expense of operation plus its payments for death claims for each year was retained by the taxpayer as a reserve for the payment of liabilities to its members, with the result that on December 31, 1945, this fund amounted to $71,374.34. As of the same date the taxpayer had a membership of approximately 25,900. The average benefit certificate liability of taxpayer was $200. Its contingent liability to its membership was approximately $5,000,000.

The Assistant Bank Commissioner, charged by law with the supervision of the taxpayer, testified that the sum held by the taxpayer to meet liabilities to its membership was not excessive, but on the other hand was so small that unless its assessment rates were raised he would expect it to be "completely washed out" within a period of years.

The Commissioner of Internal Revenue treated the difference between 20 per cent of the taxpayer's annual assessment receipts and its total expenditures for necessary and allowable expenses incurred as constituting taxpayer's net income for each year, and assessed deficiencies in income tax, penalty, and interest in the total amount of $12,538.80 for the period involved in this action. For the same period the Commissioner assessed capital stock tax, penalty, and interest against the taxpayer in the amount of $819.17. The taxpayer paid the assessments determined against it, amounting in the aggregate to $13,357.97, and brought this action against the collector.

For the purpose of Federal taxation insurance companies are divided into three separate and distinct groups. These groups are (1) life insurance companies presently taxable under section 201 of the Internal Revenue Code, 26 U.S.C.A. § 201, (2) insurance companies other than life or mutual taxable under section 204, and (3) mutual insurance companies other than life or marine taxable under section 207. In awarding judgment for the taxpayer, the District Court ruled that the taxpayer was not subject to tax as an ordinary corporation, nor as a life insurance company, nor as an insurance company other than life or mutual; but

that the taxpayer was a mutual insurance company other than life or marine.

On this appeal appellant concedes that the court was correct in holding the taxpayer not taxable as an ordinary corporation nor as a life insurance company. The claim for capital stock tax, penalty, and interest is abandoned; and no contention is made that the taxpayer is liable for income tax if, as the trial court held, the taxpayer is a mutual insurance company other than life or marine. Appellant's sole contention is that the taxpayer is an insurance company other than life or mutual, taxable on its net investment income and its net underwriting income, and liable for the income tax, penalty, and interest, assessed against it under section 204(b) (1) of the Internal Revenue Code, 26 U.S.C.A. § 204(b) (1). The argument is that taxpayer is not a mutual company, because an essential characteristic of a mutual insurance company is that it provide for the return to its policyholders of the excess in the premiums charged over the cost of insurance. Penn Mutual Co. v. Lederer, 252 U.S. 523, 533, 40 S.Ct. 397, 64 L.Ed. 698; American Ins. Co. of Texas v. Thomas, 5 Cir., 146 F.2d 434, 436. Appellant contends that no distribution of surplus can be made by the taxpayer to its members until dissolution or liquidation, and that provision for the return of accumulated premiums upon dissolution or liquidation does not suffice to qualify taxpayer as a mutual. American Ins. Co. of Texas v. Thomas, supra. We are unable to agree with this interpretation of taxpayer's bylaws and the regulations of the State Banking Department governing the taxpayer.

The regulations of the State Banking Department declare that the taxpayer is a "non-profit mutual benefit society;" that all funds received by the taxpayer, from any source whatever, above its necessary expenses allowed by law shall be held by the association for the use and benefit of its members only; that surplus funds received by the taxpayer in excess of its legal obligations may be retained by it only for the purpose of meeting its future losses; and that on liquidation or dissolution such funds shall be distributed ratably among the taxpayer's members. The bylaws of the taxpayer place the control of its operations and of the funds held by it completely within the power of its members, to be exercised at any annual meeting, at which every member has a vote and at which the majority rules. Nothing in the law governing the taxpayer prohibits the return to its members of the excess of premiums over the cost of insurance if and when the members authorize return at any annual meeting.

█ To say that an essential of mutual insurance is that the excess of premiums received over the actual cost of insurance shall be returned to the policyholders is but another way of saying that the essential of mutuality is insurance at cost. It is not necessary to mutuality that periodic returns from premiums collected be made to the members of an association. It is enough that the power exists when a surplus of premium receipts over cost of insurance in fact exists; and the determination of the existence of the appropriate surplus is largely within the discretion of those charged with the management of the association. Order of Railway Employees v. Commissioner, 2 T.C. 607, 613–615. In the Railway Employees' case the Tax Court pronounced unsound the contention made by the appellant here that taxpayer may not be taxed as a mutual because members who allow their memberships to lapse may never receive a return of any part of the premiums paid by them.

█ We think the taxpayer in this case has all the characteristics of a mutual insurance company as enumerated by the Tax Court in The Mutual Fire, Marine and Inland Insurance Company v. Commissioner, 8 T.C. 1212, 1217. Applying the concept of insurance at cost as the test of what is a true mutual, the Tax Court, 8 T.C. at pages 1220–1221, pointed out that the making of a distribution to members or the omission to make a distribution is not conclusive. The Court held that a mutual insurance company may maintain a reasonable reserve for the sole purpose of paying losses, as the taxpayer here has done and was required by law to do, but may not

establish a surplus fund for the purpose of making profits on investments. Pointing out that good reasons may exist for failing to make distributions to the members of a mutual, the Court noted that the use of high premium rates would enable a company to make rebates, while the use of low rates may make distributions impracticable, but that in either case the insurance is furnished at cost.

But, if we concede for the purpose of argument that taxpayer is an insurance company other than life or mutual and, as appellant contends, taxable under section 204(b) (1) of the Internal Revenue Code, it is clear that the taxpayer is not liable for the income tax assessed against it under that section. Appellant's argument in support of the liability of taxpayer for the tax assessed under this section of the Code proceeds upon a patently erroneous interpretation of the law governing the taxpayer. Appellant is right in saying that since the taxpayer had no investment income it was taxable, if not a mutual, on its net underwriting income, that is the assessments "earned" on its burial certificates during the taxable year, less losses and expenses incurred; and that "In order to determine whether taxpayer derived any income subject to tax under Section 204 of the Internal Revenue Code, it is necessary to ascertain whether any portion of its premium or assessment income was earned. The earned portion, less losses and expenses, was taxable; the unearned portion was not."

Developing this argument, appellant takes the position, to quote his brief, that "Taxpayer was required to allocate to its mortuary fund at least 80% of its gross premium receipts and to limit its expenses to an amount not exceeding 20%." This statement is correct, but the interpretation placed upon it by appellant is erroneous. The entire 20 per cent of the assessments collected from members was not earned for the payment of expenses in the year received. The regulations promulgated by the State Banking Department are to the contrary. Under these regulations only that percentage of assessments required by the association for the discharge of legally allowable expenses was earned and available for expenses. The controlling regulation is that only necessary expenses of the taxpayer in the operation of its business, limited to printing, stationery, postage, office supplies, clerical hire, and statutory fees, may be incurred and paid by the taxpayer.

The taxpayer had no right to apply any portion of its assessment receipts to expenses in excess of the portion necessary and actually incurred for expenses allowed by law. It could allocate to expense only that percentage of its assessment receipts required to discharge its actual allowable expense of operation. All other receipts of the taxpayer from whatever source collected were by law permitted to be held by the taxpayer for the sole purpose of paying losses or for distribution to its members.

The evidence shows beyond dispute that the taxpayer has operated in strict compliance with the law, having allocated to expenses only that portion of its assessment income necessary to discharge the allowable expense of operation actually incurred, and the balance, to the fund exclusively for the purpose of discharging its liability to its members. When appellant admits, as he does in his brief, that 80 per cent of the assessment income of taxpayer was by law held to pay current and future benefit claims and was therefore unearned, he likewise admits that the portion of its assessment income actually held by the taxpayer to pay current and future benefit claims was also unearned.

The conclusion we have reached makes it unnecessary to consider other points discussed in the brief of appellant.

The judgment of the District Court is affirmed.