**NATIONAL CHIROPRACTIC INSURANCE COMPANY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 72–164–1.**

United States District Court,
S. D. Iowa, C. D.

Oct. 3, 1973.

**972**

Kent M. Forney and Robert E. Drey (Bradshaw, Fowler, Proctor & Fairgrave), Des Moines, Iowa, for plaintiff.

Allen L. Donielson, U. S. Atty., Robert L. Fanter, First Asst. U. S. Atty., James R. Rosenbaum, Asst. U. S. Atty., Des Moines, Iowa, David A. Wilson, Jr. and Thomas R. Jones, Attys., Tax Div., Dept. of Justice and Scott P. Crampton, Asst. Atty. Gen., Washington, D. C., for defendant.

## MEMORANDUM AND RULING

STUART, District Judge.

Taxpayer is a mutual insurance company incorporated under the laws of the State of Iowa, Chapter 515, Code of Iowa, 1973, having its principal place of business in Des Moines. During the years in question in this suit, 1965 through 1970, taxpayer had filed each year Form 1120M, mutual insurance company income tax forms. These forms were audited for the years in question, and deficiencies in tax and interest were levied against taxpayer, which sums were promptly paid with claims for refunds being timely made. Refusal by defendant to refund the sums in controversy resulted in this suit being filed. Taxpayer seeks a total of $134,104.88 in refunds.

By agreement between the parties, the case was submitted to the Court on a stipulation of facts and written briefs. Subsequent to the agreement to submit this case on briefs to the Court, defendant filed a motion for summary judgment and a brief in support. The Court will disregard that motion and treat the case as fully submitted on the merits. The brief has been utilized as defendant's argument in the case.

The primary question to be decided in this case is whether the taxpayer is subject to taxation under Section 821 of the Internal Revenue Code (Title 26, United States Code, Section 821), as the taxpayer claims, or under Section 831 of the Internal Revenue Code (Title 26, United States Code, Section 831), as the defendant United States alleges. Section 821 covers income taxation of mutual insurance companies, while Section 831 deals with taxation of insurance companies other than mutuals.

In general there are three types of insurance companies: (1) stock companies; (2) mutual companies; and (3) mixed companies. Ohio Farmers Indemnity Co. v. Commissioner (CA6, 1940), 108 F.2d 665, 667. The stock companies are made up of shareholders who need

not be policyholders of the company. These shareholders contribute all the capital needed to operate the company; therefore they cover the losses and participate in the profits. A mutual company is constructed differently in that all members must be policyholders. They control the management, share in the profits and the losses; and in fact are the insurer and the insured. Mixed companies share attributes of both stock and mutual companies, however this type of insurance company is not involved in the case here, and no further comment about it will be made.

■ As noted earlier in this memorandum, taxpayer is incorporated under the laws of the State of Iowa as a mutual insurance company. The fact that taxpayer is so incorporated is not determinative of the taxpayer classification for internal revenue purposes. Such classification is governed by the Internal Revenue Code. The dispute over this tax qualification is the crux of the problem before the Court.

■ Since the dispositive question present here is whether or not taxpayer is a mutual insurance company under the definitions of the Internal Revenue Code, the Court adopts the test for a mutual insurance company set out in Modern Life & Accident Insurance Company v. Commissioner of Internal Revenue (CA7, 1969), rehearing denied 1970, 420 F.2d 36, 38. The characteristics of a mutual company under the *Modern Life* test are: (1) common equitable ownership of assets by members; (2) right of the policyholders to be members to the exclusion of others and to choose the management; (3) right of the members to the return of premiums which are in excess of the amount needed to cover losses and expenses; and (4) the sole business is the purpose of supplying insurance at cost.

■ The essence of mutuality is the capability of furnishing insurance at cost. Thompson v. White River Burial Association (CA8, 1950), 178 F.2d 954, 957. It is enough, however, that the power exists. When there is a surplus of premium receipts over the cost of insurance the management has discretion whether to retain the surplus or pay dividends. Thompson v. White River Burial Association, supra. In Penn Mutual Co. v. Lederer (1920), 252 U.S. 523, 525, 40 S.Ct. 397, 64 L.Ed. 698, the Court stated it was essential for a mutual company to provide for the return to its policyholders the excess in premiums charged over the cost of insurance. See also, American Insurance Co. of Texas v. Thomas (CA5, 1944), rehearing denied 1945, 146 F.2d 434, 436; Keystone Mut. Casualty Co. v. Driscoll (CA3, 1943), 137 F.2d 907, 911.

■ The Court has little difficulty in finding that taxpayer qualifies itself under the first two characteristics of the *Modern Life* test, i. e. that there is common equitable ownership and that the policyholders are members to the exclusion of others and that they choose the management. The ownership attributes attach when each policyholder takes out his policy. See Ohio State Life Ins. Co. v. Clark (CA6, 1960), 274 F.2d 771, cert. denied 363 U.S. 828, 80 S.Ct. 1599, 4 L. Ed.2d 1523. The exclusionary requirement is satisfied under two distinct circumstances. Article IX of the articles of incorporation specifically provide that membership in the corporation can be obtained only through the purchase of a policy. Each policyholder is then given one vote which he may exercise at the annual meeting for the election of the board of directors and other matters which are called for vote.

In addition, all of the approximately 5,000 members of the corporation are members of the American Chiropractic Association, which is comprised of only licensed chiropractors. Therefore, there becomes a double exclusion in that only policyholders can be members of the corporation and only licensed chiropractors are policyholders.

The main problem arises out of the third characteristic of the *Modern Life* test since its members do not have the right to the return of premiums which

are in excess of the amount needed to cover losses and expenses. Under Article VIII of the articles of incorporation all members of the corporation expressly waive their claims for dividends that might be declared. In addition Section 9 of the insurance contract itself also provides for this waiver of dividend claims. Article V of the bylaws, while not containing the waiver provision, does permit the board of directors to take all "excess monies" and utilize them in accordance with Article II of the articles of incorporation which provides in part that the nature of the corporation shall be "2. To protect in every way not contrary to law the philosophy, art and science of chiropractic and the professional welfare of its members."

In conjunction with carrying out this portion of Article II, (the other part covers the expenditures of sums under the policies issued), the board of directors during the years in controversy, specifically 1965, 1967, 1968 and 1970, made donations to the Foundation for Accredited Chiropractic Education (F. A.C.E.). Those contributions were substantial; $50,000 each in the years 1965, 1967, and 1968, and $100,000 in 1970. There is no allegation by the Government that F.A.C.E. is not eligible as a foundation or educational organization to receive the funds. The controversy arises because the waived dividends, or at least a portion of them, were paid to F.A.C.E. rather than to the policyholders.

The Court does not suggest it can in any way, in this case, instruct the board of directors of taxpayer as to the management of the corporation. Whether there are surpluses of money each year is of no concern to the Court. What does come under the aegis of this Court, however, is the taxpayer's qualification under the Internal Revenue Code. The Court is of the opinion that as long as all policyholders must waive their claims to any dividends, National Chiropractic Insurance Company is not a mutual insurance company under Section 821 of the Internal Revenue Code.

■ The Court also finds the taxpayer does not provide insurance at cost. In order to provide insurance at cost, an insurance company can retain only those portions of premiums paid that are needed to pay for operation of the company. Such sums would include operating costs and amounts paid out under the policies in force. As previously stated the management has large discretion in deciding if and when dividends should be paid. However, in the case at bar policyholders are not even entitled to a return of a dividend. Therefore, whether the National Chiropractic Insurance Company pays out all of its surplus or none, the cost to the policyholders remains the same. Contributions made to F.A.C.E. by the board of directors of taxpayer, whether done each year or not, do not appear to be legitimate costs of doing business. Taxpayer argues that it is a unique mutual insurance company because all of its policyholders are chiropractors and because they all share a desire to promote their profession. The Court would not seek to argue this point. The Court does not believe, however, that the taxpayer has the right to make such contributions and at the same time take advantage of the lesser tax liability granted mutual companies. Therefore,

It is hereby ordered, that the plaintiff taxpayer, National Chiropractic Insurance Company, take nothing in its claim against the defendant, United States of America, and that plaintiff bear the costs of this action.