Westchester Colprovia Corporation v. Commissioner.
Westchester Colprovia Corp. v. Commissioner
Docket No. 107833.
United States Tax Court
1943 Tax Ct. Memo LEXIS 482; 1 T.C.M. (CCH) 502; T.C.M. (RIA) 43048; January 29, 1943
*482 Herman Zelikow, C.P.A., for the petitioner. Conway N. Kitchen, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: For the fiscal year ended April 30, 1938, respondent determined an income tax deficiency of $2,589.72 and an excess-profits tax deficiency of $146.15. The only error assigned is the failure of respondent to allow the deduction of the entire contribution of $10,000 by petitioner to a trust in the taxable year. Findings of Fact The petitioner is a corporation organized under the laws of the State of New York in 1929 and is engaged in the business of manufacturing and selling asphalt paving material, with its principal office at New Rochelle, New York. It filed its federal income tax return for the fiscal year ended April 30, 1938, with the collector of internal revenue for the Third District of New York. On January 19, 1938, the board of directors of the petitioner adopted resolutions of which the following are a part: WHEREAS, during the years of the widespread national depression employees in industry had to undergo unusual hardships and distress resulting from partial or total unemployment, substantial reductions in wages caused *483 by far-flung stoppage of industrial activities, or from reduction or exhaustion of savings, and WHEREAS, such national disasters and threats to industrial stability, and industrial and individual economic depressions, emergencies and hardships are recurrent, and the future welfare of the employees of this corporation would be imperiled thereby, and WHEREAS, a large proportion of employees generally do not keep their expenditures within their income, and therefore, both in normal times as well as in times of emergencies, when overtaken by sickness, disability, reductions in wages, partial employment and old age, are without funds for the adequate care and protection of themselves and those dependent upon them for their welfare and security, and WHEREAS, this corporation is desirous of safe-guarding both in normal and abnormal times, to the greatest reasonable extent possible, the welfare and security of those of its employees who are permanently employed, and who are efficient and loyal to the interests of the corporation, by the creation of special Funds, through the use of which such employees may be assisted in emergencies; and is further desirous of rewarding, through profit *484 participations, those employees who have rendered valuable and loyal service to the corporation during the four years ended December 31st, 1937, and who will remain with the corporation and continue to contribute toward increases in its business and earnings during the three years ending December 31st, 1940, as part of a plan for pensions, profit sharing and welfare distributions for the exclusive benefit of some or all of its employees, NOW, THEREFORE, BE IT RESOLVED, that there be, and hereby is, created and established out of the estimated earnings for the fiscal year ending April 30, 1938, a Fund to be known as the "1938 Trust Fund" to which shall be appropriated the sum of Five Thousand Dollars, and which Fund and appropriation shall be conveyed to and under the control of Trustees for a Trust, the "Westchester Colprovia Employees' Economic Security Trust," and which appropriation shall be paid to the Trustees prior to the 15th day of February, 1938, in cash, securities, or other property as in the judgment of the President of the corporation will be most desirable. On the same day, a purported trust instrument was executed, containing inter alia, the following paragraphs:
*485 I. The Trust created hereunder shall be known as the Westchester Colprovia Employees' Economic Security Trust, and the said sum of $5,000.00 and any other cash, assets, securities or other property, set aside from the estimated earnings for the fiscal year ending April 30th, 1938, shall be known as the "1938 Trust Fund." II. The general purpose of the Trust shall be to accumulate or distribute the earnings and principal of the 1938 Trust Fund and such other funds as may be entrusted to the Trustees in the manner and under the conditions provided in this agreement, to those employees of the Employer who are eligible thereto, as evidenced by schedules of such eligible employees to be submitted by the Employer as hereinafter provided, and for any one or more of the purposes set out in the "Schedule of Pensions, Profit Participations, Insurance and Other Welfare Benefits" described as "Schedule B" hereto attached and made a part of this agreement. III. It is intended under this agreement that the benefits shown on Schedule B shall represent such use of the earnings and principal of the 1938 Trust Fund and other funds that may hereafter be acquired by the Trustees, as is permissible *486 under Section 23 (a), 23 (p), 23 (q), and 165 of the Revenue Act of 1936, as amended, and for the benefit exclusively of the eligible employees of the Employer, and for purposes which are known to be customary, desirable, ordinary and necessary business policies and activities, as defined and determined in controlling decisions of the Treasury Department and the Federal Courts. IV. The participation by, or distribution to, eligible employees in and from the earnings and principal of the 1938 Trust Fund and other funds that may be conveyed to the Trustees hereafter, shall be through such of the benefits and disbursements designated in Schedule B as will, within the sole discretion of the Trustees, best promote and protect the economic security and welfare of the eligible employees and those dependent upon them, and as in the judgment of the Trustees will most effectually accomplish the general purpose of this Trust. Such selected benefits and disbursements are to be made or provided by the said Trustees at the times and in the manner designated hereinafter in this agreement, and made in cash, securities, insurance, or other property, as the Trustees may determine. The Trustees, however, *487 may receive or request from the Board of Directors, the officers, or department heads of the Employer, appropriate recommendations, or applications from eligible employees. The "Schedule of Pensions, profit participations, insurance and other welfare benefits" appearing on "Schedule B", attached to the trust, is as follows: I. Direct Compensation Profit-sharing participations, bonuses awards II. Indirect Compensation or Welfare Projects Voluntary or involuntary leaves of absence Unemployment Protection Dismissal payments Idle time Sickness and disability compensation Disability Protection Medical, surgical and nursing costs Hospital and other institutional costs Pensions and annuities General Welfare and Recreational Projects Family and dependents' welfare Health building Insurance Life - Individual or group Health and accident General Financial Assistance Burial expenses Educational costs Loans and savings incentives Home purchases Co-operative stores
Casualties and losses Stock purchase plans Employees' associations Community Organizations Organizations from which Employees and the Employer derive benefits proportional *488 to contributions by the Trust. NOTE: The foregoing tabulation of Trust welfare activities, benefits and expenditures is not intended to be inclusive of all activities and expenditures that the Trustees may properly undertake or make under the authority of paragraphs II, III, IV and V, but rather in illustration and explanation thereof. Under the trust, its control and management and administration were reposed in three trustees. With certain limitations and exceptions not material, in our judgment, for a determination of the issue, the trustees were responsible for the distribution of the trust funds in their discretion among employees of the petitioner recommended by the petitioner as eligible therefor. On January 25, 1938, the petitioner paid to the Westchester Colprovia Employees' Economic Security Trust the sum of $2,000. On February 15, 1938, petitioner paid the trust the sum of $3,000. On March 1, 1938, petitioner paid the trust the sum of $5,000. During the later months of the fiscal taxable year, the trust paid to five employees the total sum of $850.03 on account of "lay-off and dismissal payments" awarded them by the trustees. In computing its income taxes for the fiscal *489 year ending April 30, 1938, the petitioner deducted the full amount of $10,000 contributed by it to the Westchester Colprovia Employees' Economic Security Trust during that year. Respondent allowed the deduction of $850.03 thereof and disallowed the remainder. Opinion The only question is whether respondent erred in disallowing the deduction of $9,149.97 which was the amount paid by petitioner to the alleged trust in the taxable year, less actual disbursements therefrom to employees during that year for "lay-off and dismissal payments * * * to employees * * *". Deductions, of course, are allowable only by legislative grace and, to sustain its position, petitioner must establish that the payment to the trust was within one or more of the statutory provisions entitling it to the deductions. New Colonial Ice Co., Inc., v. Helvering, 292 U.S. 435, 78 L. Ed. 1348, 54 S. Ct. 788. Petitioner now argues only that the record establishes that the entire contribution was allowable as a deduction under either or both of sections 23 (p) and 23 (a) of the Revenue Act of 1936. We do not think the record shows petitioner to be entitled, at most, to a deduction of more than respondent has allowed. *490 Despite the varied uses to which the funds of the trust could be put and the absence of any pension plan - reasonable, actuarially sound, or otherwise - [1] if we assume it was a pension trust within section 23 (p), supra, that section permits the deduction of (1) "* * * contributions to such trust during the taxable year to cover the pension liability accruing during the year * * *" and, upon certain conditions, (2) an additional allowance of "* * * a reasonable amount transferred or paid into such trust during the taxable year in excess of such contributions * * *". Respondent has here allowed the deduction permitted under (1). It permitted the deduction of all the amounts the trust paid out during the taxable year to the employees of the petitioner to whom such payments were awarded during that year. Does this record disclose the existence of the conditions basing any additional allowance under (2)? We think not. Assuming the existence of the doubtful premises that the trust was "* * * exempt from tax under section 165 * * *", the additional allowance *491 is limited to "a reasonable amount", and that amount must, in any event, be "apportioned in equal parts over a period of ten consecutive years beginning with the year in which the transfer or payment is made". Here, not only is there no apportionment, but the record is wholly sufficient upon which to determine what, if any amount, is reasonable. But petitioner contends that if not allowable under section 23 (p), it is so under section 23 (a). It would be difficult, however, to believe that any such deduction if denied under the particular provisions of section 23 (p) could be allowable under the general provisions of section 23 (a). Cf. Monarch Life Insurance Co., 38 B.T.A. 801. But even if that were so, the necessary proof to support the factual premise requisite to the deduction of any amount as an ordinary and necessary expense of petitioner for the taxable year, under the latter section, in addition to the amount already allowed by the respondent, is wanting here. And that failure, alone, precludes the allowance of any additional deduction. Nor can the attempted restriction on the use of its funds contained in paragraph III of the trust instrument *492 supply that proof. Laudable as the creation of this trust may have been, we think petitioner has failed to show error in the contested disallowance. Although the issue was not formally raised by the pleadings, at the hearing in this proceeding counsel for the petitioner in his opening statement asserted that the respondent had erred in the computation of petitioner's undistributed profits surtax by failing to allow it the specific credit to which it was entitled under the provisions of section 14 (c) of the Revenue Act of 1936. In view of this apparent mechanical error, Decision will be entered under Rule 50. Footnotes
1. Regulations 94, article 23 (p)-1, as amended by T.D. 4792, 1938-1 C.B. 152↩.