MODERN LIFE & ACCIDENT INSURANCE COMPANY, PETITIONER *v.* COM-
MISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3501–65.   Filed March 25, 1968.

*Carl Schulz* and *Harry S. Tressel*, for the petitioner.
*Seymour I. Sherman*, for the respondent.

OPINION

Petitioner was incorporated in 1923 to operate as an insurer under an assessment plan in accordance with an Illinois statute enacted in 1893. During the years 1959 through 1962 it operated as an Assessment Accident and Health Company under article XXI of the Illinois Insurance Code of 1937.[3] Petitioner contends that it cannot be taxed as a mutual company under section 821 of the Internal Revenue Code and related sections because its surplus fund is such that it can never be converted into a domestic mutual company under article III of the Illinois Insurance Code of 1937[4] due to the nature of its activities and the fact that it has never paid a dividend to its policyholders. Therefore, the petitioner claims that it must be taxed as an insurance company other than life or mutual under the provisions of sections 831 and 832. We reject these arguments because we think the petitioner was a mutual insurance company during these years and, as such, taxable under section 821(a).[5]

Petitioner asserts that, in determining whether it is a mutual company for Federal tax purposes, we must rely on pertinent State law. We disagree. The petitioner's status for Federal income tax purposes must be determined under Federal law. There is no indication, either in the statutory language of the insurance provisions or in the related legislative history, that Congress intended for mutual insurance companies to be taxed other than under a nationwide scheme of taxation.[6]

---

[3] Ill. Ann. Stat. ch. 73, secs. 983–989 (Smith-Hurd 1965).

[4] Ill. Ann. Stat. ch. 73, secs. 648–672 (Smith-Hurd 1965).

[5] Sec. 821(a). IMPOSITION OF TAX ON MUTUAL COMPANIES OTHER THAN INTERINSURERS.—There shall be imposed for each taxable year on the income of every mutual insurance company (other than a life or a marine insurance company or a fire insurance company subject to the tax imposed by section 831 and other than an interinsurer or reciprocal underwriter) a tax computed under paragraph (1) or paragraph (2), whichever is the greater : * * *

[6] While we express the view that mutual insurance companies are to be taxed under a nationwide scheme and ultimately hold that petitioner is a mutual company, we would also reach the same result if Illinois law were applied. Under Illinois law the fact that an insurance company issues assessable insurance policies does not exclude it from treatment as a mutual company. See Ill. Ann. Stat. ch. 73, sec. 667 (Smith-Hurd 1965) ; and People v. Crossley, 36 Ill. 2d 298, 222 N.E. 2d 488 (1966).

Cf. *Local Finance Corp.*, 48 T.C. 773, 793 (1967), and the cases cited therein. This view is fortified by those cases in which courts have wrestled with the problem of whether an insurance company is to be taxed as a mutual company for Federal tax purposes. In *Ohio Farmers Indemnity Co.* v. *Commissioner*, 108 F. 2d 665, 667 (C.A. 6, 1940), the court in "seeking to ascertain the intention of the Congress," said it must be assumed that Congress "used the word 'mutual' as applied to insurance companies in the sense it had long and generally borne in insurance matters. In other words, the term should be given its usual trade signification." See also *Keystone Automobile Club Casualty Co.* v. *Commissioner*, 122 F. 2d 886, 889 (C.A. 3, 1941). And in *Estate of Clarence L. Moyer*, 32 T.C. 515 (1959), this Court found that a gratuity fund established by a Philadelphia-Baltimore Stock Exchange was a mutual insurance company taxable under section 821 despite the fact that it was not an insurance company for State law purposes.

Prior to 1942 mutual insurers were taxed under rather loose, ineffective statutes. The Revenue Act of 1942 introduced the present breakdown of insurers into life, mutual, and other than life or mutual, the latter category also including specific types of mutuals. The House report [7] accompanying that bill contains the following statements:

2. MUTUAL INSURANCE COMPANIES OTHER THAN LIFE

Section 144 of the bill * * * also completely revises the taxing provisions, basing the levy on underwriting and investment income, in a manner similar to that applied to stock insurance companies other than life. * * *

3. INSURANCE COMPANIES OTHER THAN LIFE OR MUTUAL

These deductions are granted under the limitations that obtain for mutual insurance companies other than life, and their effect is to put stock companies on a fair competitive basis with mutual companies in respect of their participating insurance.

These statements by the House reflect an intent to define mutual insurance companies in an extremely broad manner for Federal tax purposes, i.e., in the sense of policyholder-oriented organizations as opposed to stock companies. A similar intent is revealed in the Senate report.[8] In addition, it is clear that Congress considered assessable insurance policies and intended to treat assessment companies as mutual insurers for Federal tax purposes. This is shown by language that: "Section 207(b)(2) [sec. 822(e), I.R.C. 1954] defines 'net premiums' in a manner that produces substantially the same effect as in section 204(b)(5) of the Code, and includes deposits and assessments, but excludes amounts returned to policyholders which are treated as dividends under section 207(b)(3)." [9] Likewise, the courts have indicated that an insurance company operating on an assessment basis can be treated as a mutual insurer. See *Thompson* v. *White River Burial*

---

[7] H. Rept. No. 2333, 77th Cong., 1st Sess. (1942), 1942–2 C.B. 395.
[8] S. Rept. No. 1631, 77th Cong., 2d Sess. (1942), 1942–2 C.B. 531–532 and 615–618.
[9] 1942–2 C.B. 617.

*Ass'n.*, 178 F. 2d 954 ('C.A. 8, 1950), where the Court of Appeals found that the taxpayer, which was an unincorporated burial association whose "sole source of income is from dues and assessments levied quarterly on its membership," was a mutual insurance company; *Peter Theodore*, 38 T.C. 1011 (1962); and *Property Owners Mutual Insurance Co.*, 28 T.C. 1007 (1957).

Neither the Internal Revenue Code of 1954 nor the regulations thereunder define a mutual insurance company. However, the courts are in general agreement that mutual insurance companies have the following characteristics: Common equitable ownership of assets by members; the right of policyholders to be members to the exclusion of others and to choose management; sole business purpose of supplying insurance at cost; and the right of members to the return of premiums which are in excess of the amount needed to cover losses and expenses. *Thompson* v. *White River Burial Ass'n.*, *supra;* *Ohio Farmers Indemnity Co.* v. *Commissioner*, *supra;* and *Estate of Clarence L. Moyer*, *supra.*

Applying these criteria to the facts of this case, we conclude that petitioner was a mutual insurance company taxable under section 821. Unlike a stock insurance company, petitioner had no shareholders. Instead it had a common equitable ownership of assets by its policyholders. Although its articles of incorporation and bylaws are silent as to the rights of policyholders upon dissolution, we have no doubt that the policyholders would be able to take the legal title and possession of assets remaining after dissolution and the satisfaction of creditors.

Under petitioner's articles of incorporation its policyholders are its members, its directors are elected by them, and "all questions shall be determined" by the policyholders. That the policyholders have such rights is convincing evidence that petitioner meets this particular requirement of mutual insurance companies.

The third characteristic, viz, supplying insurance to its policyholder-members at cost, is also present here. Under petitioner's bylaws its board of directors has the right to set the premiums as required by its experience and "to vote for an additional assessment whenever it may be necessary." This demonstrates a clear intent to provide insurance at cost. So also does the fact that after the "Guarantee Fund Certificates," representing advances to petitioner, are taken into account, petitioner had a deficit unassigned surplus at the beginning of 1959 [10] This indicates that throughout its history petitioner has had no real profit motive, and the relatively small increases in unassigned surplus for 1959 through 1962 do not convince us otherwise.

---

[10] Petitioner's annual statement filed for the year 1959 showed an unassigned surplus as of Dec. 31, 1958, in the amount of $97,136.59. However, this did not take into account the "Guarantee Fund Certificates."

Petitioner meets the last characteristic of a mutual insurance company, namely, that its members have a right to premiums in excess of amounts needed to cover losses and expenses. Petitioner contends that under applicable Illinois law,[11] it cannot pay dividends to its policyholders since the following condition must be met:

Sec. 666. Dividends

(3) The declaration and payment of dividends by any company subject to the provisions of this article shall be subject to the following conditions:

(a) No dividend shall be declared or paid at any time except out of earned, as distinguished from contributed, surplus, nor when the surplus of the company is less than the original surplus required in section 43[2] for the kind or kinds of insurance the company is authorized to write nor when the payment of such dividend will reduce its surplus to less than such amount. [Footnote omitted.]

Petitioner then notes that section 43 (ch. 73, sec. 655) requires that a company writing accident and health insurance maintain a surplus of at least $200,000. However, this restriction on dividends which applies to petitioner, through reference by section 889 of the Illinois Insurance Code, also applies to all mutual insurers in the State of Illinois. Yet petitioner would not argue that this restriction disqualifies all mutual insurers in the State of Illinois from treatment as mutual insurance companies for Federal tax purposes. As evidenced by the declarations contained in its annual statements, petitioner's surplus is held for the benefit of its policyholders; and there is nothing, in the Illinois Insurance Code of 1937 or in petitioner's articles of incorporation, to indicate that such premiums in excess of losses and expenses do not belong to the policyholders or that dividends cannot be declared when there is an earned surplus.

Nor must there be actual distributions to policyholders before a company can qualify as a mutual insurance company for Federal income tax purposes. See *Thompson* v. *White River Burial Ass'n*., *supra; Peter Theodore, supra; Mutual Fire, Marine & Inland Insurance Co.*, 8 T.C. 1212 (1947) ; and *Order of Railway Employees*, 2 T.C. 607 (1943). Here, in the years 1959 through 1962, the petitioner was unable to pay any dividends to its policyholders. At the beginning of 1959 its unassigned surplus was less than the "Guarantee Fund Certificates" representing loans from outsiders; and the fact that loans were necessary, in earlier years, to cover its obligations shows that petitioner had little or no unassigned surplus. Even at the end of 1962 it had an unassigned surplus of only $113,219.63,[12] which is relatively small when compared to its potential liability on policies written, as represented by over $2,250,000 in premium payments, and in light of its net gain from operations in that year of less than $5,000. Cf. *Holyoke Mutual Fire Insurance Co.*, 28 T.C. 112 (1957) ;

---

[11] Ill. Ann. Stat. ch. 73, sec. 666(3)(a) (Smith-Hurd 1965).

[12] This figure takes into account the "Guarantee Fund Certificates."

and *Mutual Fire, Marine & Inland Insurance Co., supra.* Petitioner has been operating at a level near its break-even point. It is plain that a mutual insurer has the option of charging high premiums with the expectation of making dividend payments to its policyholders or of assessing low premiums with the intent of issuing no rebates. *Thompson* v. *White River Burial Ass'n., supra.* Therefore, we believe that petitioner's policyholders had a right to receive dividends. Simply because they never actually received them does not disqualify petitioner from status as a mutual insurance company for Federal tax purposes.

Petitioner meets the Court-applied criteria used to ascertain whether it is a mutual insurer. Likewise, we are unaware of any statutory language, either in the Internal Revenue Code or the Illinois Insurance Code of 1937, which prohibits the treatment of assessment companies as mutual insurers. Accordingly, we hold that petitioner was a mutual insurance company during the years in question.

*Decision will be entered for the respondent.*